Filed
D.C. Superior Court
12/26/2021 08:38PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **TIMOTHY L. JENKINS**<br>**4200 MASSACHUSETTS AVE. NW**<br>**WASHINGTON, DC 20016** | ) <br> ) <br> ) <br> ) |
| **ALTA JEANNETTE CANNADAY**<br>**3313 HAMPTON POINT DR. APT. B**<br>**COLESVILLE, MD 20904** | ) <br> ) <br> ) <br> ) |
| **WILLIAM VALENTINE KEENE**<br>**19135 US HIGHWAY 19 N. #J28**<br>**CLEARWATER, FL 33764** | ) <br> ) <br> ) <br> ) |
| **STEPHEN D. JACKSON**<br>**29 MERRIL PLACE**<br>**INWOOD, NY 11096** | ) <br> ) <br> ) <br> ) |
| **MARIA P. JONES**<br>**2211 DOUGLAS ST. NE**<br>**WASHINGTON, DC 20018** | ) <br> ) <br> ) <br> ) |
| **WILLIE-LLOYD REEVES**<br>**1250 4TH ST. SW #W406**<br>**WASHINGTON, DC 20024** | ) <br> ) **CASE NO:** 2021 CA 004729 B<br> ) <br> ) |
| **APRIL R. SILVER**<br>**297 OCEAN AVENUE #3D**<br>**BROOKLYN, NY 11225** | ) <br> ) <br> ) <br> ) |
| **DAANEN STRACHAN, PH.D.**<br>**3196 WESTOVER DR. SE**<br>**WASHINGTON, DC 20020** | ) <br> ) <br> ) <br> ) |
| **SOWANDE S. TICHAWONNA**<br>**1320 WEBSTER ST. NE**<br>**WASHINGTON, DC 20017** | ) <br> ) <br> ) <br> ) |
| **ANGELA R. TRAPP**<br>**105 WILMINGTON PLACE**<br>**TYRONE, GA 30290** | ) <br> ) <br> ) <br> ) |
|                      **PLAINTIFFS,** | )     2021 CA 4729 B<br> ) |
| **V.** | ) <br> ) |

4840-3079-5248.v1

| | |
|---|---|
| **HOWARD UNIVERSITY, INC.** ) | |
| **2400 6TH STREET NW** ) | |
| **WASHINGTON, DC  20059** ) | |
| ) | |
| **AND** ) | 2021 CA 4729 B |
| ) | |
| **BOARD OF TRUSTEES** ) | |
| **HOWARD UNIVERSITY** ) | |
| **C/O** ) | |
| **SECRETARY OF THE BOARD** ) | |
| **2400 6TH ST. NW** ) | |
| **WASHINGTON, DC  20059** ) | |
| ) | |
| **DEFENDANTS.** ) | |

## <u>COMPLAINT</u>

COME NOW Plaintiffs, Timothy L. Jenkins, Esq., Willie Lloyd Reeves, Esq., William "Damani" Keene, Alta Jeannette Cannaday, April R. Silver, Stephen D. Jackson, Maria P. Jones, Daanen Strachan, Ph.D.,, Sowande S. Tichawonna and Angela R. Trapp, by and through undersigned counsel and respectfully file this Complaint against Howard University and the Howard University Board of Trustees ("BOT") pursuant to their respective violations of applicable Howard University Board of Trustee By-laws. These violations resulted in the BOT's illegal exclusion of certain Affiliate Trustees from election to its Board, which effectively deprived it of its required complete membership for seventeen (17) months, beginning June 2020 through November 2021. Counter-intuitive to its fiduciary obligations and stated principles of shared governance, the BOT carefully developed and implemented a course of conduct designed first to temporarily freeze the election process beginning in April 2020, and then in November 2021, to permanently exclude Affiliate Trustees (alumni, students, and faculty from its Board) by amending its By-laws without these members enjoying the right to participate in that process.  As a result, more than 90,000 alumni have been effectively disenfranchised from its longstanding role in

electing independent alumni to the BOT. The immediate civil action presents the sole means by which Howard University alumni, through this court, can remedy the University's violations of its governing rules and correct the illegal way in which it has disenfranchised alumni and all Affiliate Trustees from a shared role in its governance.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to hear this matter under D.C. Code §§ 11-921. As to venue, the actions herein occurred in the District of Columbia.

## PARTIES [1]

2. Plaintiff Timothy L. Jenkins, Esq. is a Howard University (hereafter "Howard" or "HU") Alumnus, Class of 1960, former student body president, former member of the HU Board of Trustees, former Special Counsel to HU during the presidency of the late Dr. James E. Cheek, a co-founder of SNCC, and a resident of the District of Columbia.

3. Plaintiff Willie-Lloyd Reeves, Esq. is an HU Alumnus, Class of 1971, Liberal Arts and Class of 1974 School of Law, and a former student leader in both the undergrad and law schools. He is a resident of the District of Columbia.

---

[1]/ The Howard University Alumni Association ("HUAA") is organized and operated as an entity regulated by the University's Department of Development and Alumni Affairs. Its elections are subject to oversight and control of the University's Board of Trustees. Its Constitution at Article X, Section 1 requires the Association to submit a proposed nomination and election procedures to the Board of Trustees for approval not later than January 31 of the year in which an election is to be held. Its nomination and election procedures shall comply with University By-Laws and the policies and procedures established by the Board of Trustees as may be amended. To the extent that the BOT controls and informs HUAA's governance, including its purse strings, it is compromised in its ability to challenge the BOT's s actions, as here. As a result, despite urgings from concerned alumni at no time did it challenge, legally or otherwise, the BOT's refusal to fill Affiliate Trustee positions between April 6, 2020 and November 5, 2021. Nor was this issue brought to Alumni attention or presented by HUAA to alumni at large for discussion and debate at any point between April 6, 2020 and November 5, 2021.

4.  Plaintiff William "Damani" Keene is an HU Alumnus, Class of 1966, a former career employee/administrator of HU having served as Dean of Residence Life, Special Assistant to the VP for Student Affairs, Acting Director of Blackburn University Center, and Associate Director of Student Activities. He is also a former Alumni Trustee member of the HU Board of Trustees.   He is a resident of Clearwater, Florida.

5.  Plaintiff April R. Silver is an HU Alumna, Class of 1991, BA Liberal Arts, former President of the Howard University Student Association ("HUSA"), and co-leader of the 1989 Howard University student protest.  She is a resident of Brooklyn, New York.

6.  Plaintiff Maria P. Jones is an HU Alumna, Class of 1988, BA School of Communications, and a resident of the District of Columbia.

7.  Plaintiff Sowande S. Tichawonna is an HU Alumnus, Class of 1985, BA Liberal Arts.  He is a resident of the District of Columbia.

8.  Plaintiff Angela R. Trapp is an HU Alumna, Class of 1994, BSEE Engineering.  She has held several leadership positions in the Howard University Alumni Association (hereafter "HUAA").  She is a resident of Tyrone, Georgia.

9.  Plaintiff, Daanen Strachan, Ph. D is an HU Alumnus, Class of 1988, BS Liberal Arts. He is a former student leader.  He is a resident of the District of Columbia.

10. Plaintiff Alta Jeannette Cannaday is an HU Alumna, Class of 1991, BS Liberal Arts. She has served in various capacities in HUAA.

11. Plaintiff Stephen D. Jackson is an HU Alumnus, Class of 1986, BS Liberal Arts, and a former student leader. He is a resident of Inwood, New York.

12. Defendant Howard University is a federally chartered non-profit educational institution originally organized by an Act of the United States Congress. It received its tax-exempt non-profit status in 1940, and is subject to District of Columbia Non-Profit laws.

13. Defendant, Howard University's Board of Trustees (hereafter "BOT" or "Board") is Howard's governing body and is governed by a set of By-laws last amended on November 5, 2021. At all times referenced herein, Plaintiffs assert that its 2018 By-laws govern its actions herein, and that its November 2021 amendment of its By-laws was *ultra vires*.

## FACTUAL BACKGROUND

### HISTORY OF SHARED GOVERNANCE AT HOWARD UNIVERSITY

14. Howard University enjoys a rich history of shared governance, a concept that involves University stakeholder (alumni, students, and faculty) participation in the University's governance process. Alumni trustees have been on Howard's BOT since 1926. Student trustees have served since 1970.

15. For nearly 100 years, alumni trustees, *elected by alumni*, have been an invaluable asset to the University's highly promoted principle of "shared governance."

16. On April 8, 1926, a bill known as H.R. 11112 to amend section 4 of the Act of Incorporation of Howard University, which appears to be the first historical reference to Alumni representation on the BOT, introduced in the United States House of Representatives, read as follows:

> The government of Howard University shall be vested in a board of trustees, not less than eighteen in number, to be appointed and elected as follows: one-third appointed by the Commissioner of Education, one-third elected by a mail ballot of the alumni of the University under alumni auspices, and these two-thirds thus appointed and elected shall at their first meeting elect by a written ballot one-third additional trustees to complete the required number of not less than eighteen trustees: provided, that each group shall be appointed and elected so as to have the terms of each group expire one-third in one year, one-third in two years, and one-

5

third in three years. After the first election the term of service of each trustee thereafter elected or appointed shall be for three years." [2]

17. On October 31, 1969, after an extraordinary 1968 student protest seeking enhanced BOT transparency and accountability, the Board considered its students' request for Trustee membership. At this meeting, then President of Howard, the late Dr. James Cheek, stated

"…. *that prior structures and forms which evolved over the years to govern American institutions of higher learning were no longer appropriate. The University is a community and that to protect this concept, all aspects of the community must be active participants in the decision-making apparatus of the institution.*" (Emphasis added)

18. In 1970, the BOT voted to add elected student and faculty to its membership as Affiliate Trustees. See Board of Trustees By-laws at Article I, Sections 2.

19. The importance of these Affiliate Trustees has been addressed in multiple studies. An October 1974, Arthur D. Little, Inc. report, titled Comprehensive Study of the University's Governance and Management, to the University ("1974 Report") specifically embraced a governance structure which included Affiliate Trustees when it recommended the following regarding policy formulation: "….we suggest that student and faculty participation in actual policy formulation be focused where it is now, in the hands of elected student and faculty Trustees acting as equals with the other Trustees on the Board."

20. The 1974 Report further noted that with the addition of faculty and student trustees, the Board now adequately represented the concerns of the University's internal constituencies. Finally, it was noted that Board policy prohibited any Trustee from functioning as an advocate of a special interest group or constituency. Thus, there was an inherent control on subjective advocacy.

---

[2] / "A History of the Federal Appropriation of Howard University 1867-1926" at 7. Although that amendment did not pass, the BOT in that same year initiated a process for alumni to nominate Board trustees to ensure shared governance at the university's highest level. That year coincided with Mordecai Johnson becoming Howard's first African American President.

## HOWARD'S MARCH 2020 ACCREDITATION SELF-STUDY

21. In March 2020, the University completed a Self-Study ("hereafter "Study") for submission to the Middle States Commission on Higher Education.  The 2020 Study, as did an earlier 2009 Self-Study, reviewed Howard's governance structure and underscored its tradition of shared authority and responsibility, including the election of students and faculty to its Board.  Howard promoted shared governance in that Report as follows: the "adherence to shared governance invites the voices of internal constituents in key decisions, noting that its governing structure incorporates policies that directly support its stated mission and core values."

22. The Study on page 100 reiterated this point:

> Howard University embraces the concept of shared governance; its leadership has been deliberate about including all stakeholders in major decision-making (e.g., faculty members play large and critically important roles on four task forces of paramount importance concerning the direction of the university: Strategic Plan 2019-2024, Academic and Administrative Program Prioritization Task Force, Budget Advisory Committee, and Middle States self-study).  (Emphasis added)

23. One key finding in that 2020 Study was that "Howard University's leadership had been deliberate about including all stakeholders in major decision-making." (Emphasis added).

24. The presence of Affiliate Trustees on Howard's BOT is a sacred space for university stakeholders who support and respect the University's unique history, as an educational center expressly developed immediately after the Civil War to meet the great educational need of previously enslaved Americans of African descent. The BOT's decision to amend applicable By-laws to erase time honored shared governance principles naturally caused great consternation among the affected stakeholders. Each constituent group raised serious concerns about the manner in which the BOT executed the usurpation of their rights and thwarted shared governance's storied history.  Repeated efforts were made after the BOT's

succinct announcement to obtain the basic information upon which the BOT relied and the applicable process in which it decided to disenfranchise Affiliate Trustees. Its response was minimal, insensitive, and token in nature. Given its November 5, 2021 vote to permanently exclude Affiliate Trustees, no recourse exists outside of the BOT itself to ensure transparency and its compliance with its own By-laws other than through a court of law. Absent this court's review there exists no other forum in which thousands of affected alumni can ensure the legality of the BOT's actions.

## THE NATURE OF THE ALUMNI-BOT DISPUTE

25. By-laws are legally enforceable contracts that outline how the Board will operate its affairs These rules govern the manner in which a Board itself reviews its own actions. Howard's amended 2018 By-laws govern the civil dispute here, which dispute consists of the following: 1) the Board's Governance Committee's April 6, 2020 freeze of the nomination, election, and seating of Affiliate Trustees on the BOT under the emergency pretense of COVID, thereby immediately precluding faculty, students, and alumni trustee membership except for then seated Affiliate Trustees;  2) the Board's subsequent June 2021 vote, 14 months later without the excluded, but required Affiliate Trustee membership being seated on the BOT; 3) the Board's  November 5, 2021 vote to amend Article 1, Section 2 of the By-laws to exclude Affiliate Trustees without the excluded, but required Affiliate Trustee membership being seated on the BOT.  The BOT's Governance Committee's April 6, 2020 "recommendation" effectively struck Affiliate Trustees from the Board between June 2020 and November 2021, for approximately 18 months.

26. Resultingly, Howard Alumni in their entirety, which includes Plaintiffs, have been injured via their disenfranchisement at the highest level of the University's governance; they have lost the right to membership on the Howard University Board of Trustees with all attending notice and voting rights and privileges.

## APPLICABLE BY-LAWS

27. The following By-law provisions were implicated by the BOT's actions beginning in April 2020 through November 2021:

ARTICLE I

SECTION 2: Membership on the Board.

The number of Trustees shall be up to 35, unless otherwise specified by recommendation of the Governance Committee, for a specific period of time, and by majority vote of the full Board. ***Of such number, three shall be designated as Alumni Trustees, two as Faculty Trustees, and two as Student Trustees. ....*** (Emphasis added)

SECTION 4: Action without Formal Meeting.

Any action required or permitted to be taken by the Board or by any Committee thereof may be taken without a formal meeting, *if a majority of the Trustees entitled to vote approve* the action in writing, fax, electronic mail, website voting or other record. The Secretary shall prepare and maintain a record of the action and the individual approvals of the Members of the Board or of a Committee and shall file the same with the minutes of the proceedings of the Board or the Committee.

SECTION 5: Board Action.

The affirmative vote of a majority of the Trustees present at a meeting of the Board, or at any Committee thereof, at which a quorum is present shall be required for any action of the Board, or of such Committee, unless the vote of a greater number of Trustees is required by a statute, the University Charter, or by these Bylaws:
. . . .
SECTION 6: Quorum.

Except as otherwise provided in these Bylaws, one-third of the membership of the Trustees, or of a Committee thereof, shall constitute a quorum for any meeting of the Board or of such Committee, except that a majority shall be

necessary to establish a quorum of the Executive Committee when such Committee is acting for the entire Board. …

SECTION 7: Terms of Office for Trustees

(a) General Rule -- Trustees shall be elected by the Board of Trustees at any regular or special Meeting of the Board, *provided that the notice required for such meeting advises the Trustees of such election.* The term of Office of a Trustee shall begin on the first day of the month next following the month in which the Trustee was elected. Except as provided for in subsection (c) of this Section 7 with respect to the term of Office applicable to Alumni, Faculty, and Student Trustees, and except with respect to the President (who shall remain a Trustee for his or her entire term as President of the University):

. . . .

SECTION 8. Nomination and Election of Trustees.

Affiliate Trustees *are nominated via a process by their respective constituents*, however, election to the Board is the exclusive authority of the Board of Trustees. The number and term of Affiliate Trustees shall be as provided for in this subsection (c).

(i) *Alumni Trustees – The three Alumni Trustees shall be elected for terms of three years each. Such terms shall be staggered so that one such term expires each year. An individual shall be eligible to serve only two consecutive terms as an Alumni Trustee.*

(ii) Faculty Trustees – *The two Faculty Trustees shall be elected for terms of three years each. S*uch terms shall be staggered, in a manner deemed appropriate by the Board, so that both terms do not expire during the same year. An individual shall be eligible to serve only two consecutive terms as a Faculty Trustee.

(iii) Student Trustees – The two Student Trustees shall be elected for terms of one year each. Student Trustees shall be eligible to serve no more than one term as a Student Trustee.

## ARTICLE II: BOARD MEETINGS

SECTION 1: Regular Meetings.

(a) Dates -- There shall be at least three Regular Meetings of the Board of Trustees each year, one of which shall be designated as the Annual Meeting of the Board. Regular Meetings shall take place at such time and locations as may be established from time-to-time by the Board.

Notice -- Notice of the time and place of Regular Meetings *shall be sent to all Members of the Board* upon adoption of the Regular Meeting scheduled by the Board and at least 30 days prior to each such meeting. (Emphasis added).

SECTION 5: Board Action.

The affirmative vote of a majority of the Trustees present at a meeting of the Board, or at any Committee thereof, at which a quorum is present shall be required for any action of the Board, or of such Committee, unless the vote of a greater number of Trustees is required by a statute, the University Charter, or by these By-laws…

SECTION 6: Quorum.

Except as otherwise provided in these Bylaws, one-third of the membership of the Trustees, or of a Committee thereof, shall constitute a quorum for any meeting of the Board or of such Committee, except that a majority shall be necessary to establish a quorum of the Executive Committee when such Committee is acting for the entire Board….

### ARTICLE VIII.  AMENDMENTS

*These By-laws may be amended by the affirmative vote of three-fourths of the members present, provided, that **one half of the total membership of the Board is present and notice of the proposed amendment has been given to each member of the Board at least 30 days before the meeting**.*  (Emphasis added)

### THE BOT'S CONSOLIDATION OF POWER AND AUTHORTITY

28. In recent years Howard's embrace of shared governance, coupled with societal interest in social justice, the election of Kamala Harris to the Vice-Presidency, and the achievement of other celebrated alumni, has led to increased philanthropic support.

29. Instead of maximizing an opportunity to strengthen University-stakeholder relationships in its often-stated support for shared governance, the University and the BOT disenfranchised and minimized expressions of unique, valued, and diverse views in its governance process, which means here the right to vote.

30. Beginning in January 2015, the BOT decided to scrutinize Affiliate Trustees selected by their respective constituencies to sit on the BOT.  Its action at that time violated its By-

laws and was repealed on April 18, 2015. In September 2015, the BOT reinstituted its vetting decision, thereby qualifying (by pre-clearance) stakeholder selections of candidates elected by their membership to the BOT.

31.  On October 23, 2018, the BOT seated two (2) newly elected Affiliate Trustees:  an Alumni Trustee and an Undergraduate Student Trustee; it did not seat the Undergraduate Faculty Trustee. It also  appointed one (1) General Trustee.

32. On November 13, 2019, nearly one year later, the BOT seated three (3) new Affiliate Trustee members: an alumni trustee, and the undergraduate and graduate student trustees; it also appointed an additional general trustee.

33. Between January and February 2020, the University sought nominations from alumni to fill a then vacant alumni trustee position.  The elected alumni trustees at that time were Eugene "Rock" Newman and Jill B. Louis.  Mr. Newman's term expired in June 2020 and Ms. Louis's term expired in June 2021. Subject to the Governance Committee's suspension of the Affiliate Trustee elections in April 2020, no Affiliate Trustee elections occurred between June 2020 and June 2021; consistent therewith the BOT did not fill these two (2) alumni seats.   See Ex. 1 (Chart depicting Affiliate Trustee vacancy status).

34. Chris Washington, the most recently elected Alumni Trustee, remains the sole Alumni Trustee on the Board; his term expires in 2022.

**THE GOVERNANCE COMMITTEE RECOMMENDATION**

35.  On April 6, 2020, approximately one month after the University completed its March 2020 Self-study, the BOT's Governance Committee notified "the Howard University Community" that it was freezing the Affiliate Trustee nomination, election, and BOT seating process due to the COVID-19 pandemic. Without reference to any By-law

provision authorizing the Committee Chairperson's singular shut down of the Howard

Affiliate Trustee elections, that correspondence stated as follows:

> As you know, the country is in a midst of an unprecedented global public health
> crisis as a result of the COVID-19 pandemic. Among the unprecedented actions the
> University has taken in response is the evacuation of the campus, except for
> essential personnel, and the migration of all classroom instruction to a remote
> learning platform. The Board of Trustees has been engaged as these decisions were
> made for the health and safety of every member of the Howard Community and the
> surrounding neighborhood….
>
> While these considerations are underway and given the urgent business at hand in
> addressing COVID-19, the Committee has asked the Board of Trustees to pause on
> adding any new Board members including via elections for affiliate trustees. These
> deliberations will take into account how to assure that our critical stakeholders can
> make the most positive contributions towards university governance, as well as how
> the Board of Trustees should benefit from the most diverse and comprehensive
> experiences                    and                    views                    available.
>
> The Governance Committee has notified the Office of Alumni Relations on behalf
> of the alumni trustee election and the Faculty Senate Committee on behalf of the
> faculty trustee election of *this decision. In addition, the Governance Committee will
> not recommend any new general trustees for election to the Board until further
> notice.* (The Board values the input of all University stakeholders and is committed
> to engaging the current elected leaders of the Howard University Student
> Association (HUSA), the Howard University Alumni Association (HUAA), the
> Faculty Senate and the Howard University Staff Organization (HUSO) as they
> continue the stewardship of the University through this very difficult period.   See
> Ex. 2.

36. There is no provision in the applicable 2018 By-laws that authorizes the BOT to suspend

its By-laws for emergency reasons such as COVID. Moreover, BOT meetings commenced

after April 6, 2020 virtually in "business as usual" mode.  No such "further notice" came

from the Governance Committee.   Nor did the BOT take any steps thereafter to duly

constitute the Affiliate Trustee nomination/election process in accordance with its

applicable By-laws.

37. The Governance Committee's action, whether a "recommendation", or a "decision"

effectively violated Article 1, Section 2, which required the BOT to seat Affiliate Trustees

as full members and to follow the processes outlined in Article I, Sections 7 and 8 to ensure full Board membership.  Once seated, as required, Affiliate Trustees enjoyed an the same right as other BOT members to participate in and to vote in the Board's June and November 2021 meetings, which includes the debate and consideration of their proposed removal.

38. The Governance Committee effectively prohibited the required Affiliate Trustee membership from being elected and seated on the BOT between April 6, 2020 and November 5. 2021, except then seated Affiliate Trustees were allowed to complete their terms.  This did, however, cure the University's violation of its By-laws.

39. Absent a Board-approved resolution or By-law amendment, the BOT's Governance Committee illegally disenfranchised Plaintiffs and thousands of other alumni stakeholders who were eligible to vote for Affiliate Trustees between June 2020 and June 2021.

### THE DELIBERATE AND STRATEGIC EXCLUSION OF AFFILIATE TRUSTEES

40. Despite its March 2020 Self-study's promotion of shared governance, the BOT's Governance Committee froze the nominations/elections/seating of Affiliate Trustees.

41. On June 14, 2021 the BOT Chairman formally announced that it had voted "unanimously" to eliminate Affiliate Trustee membership positions from the Board.  Both the Board's June and November votes to exclude Affiliate Trustees occurred without approximately six (6) required Affiliate   Exhibit 3.  Trustees being seated on the BOT at the time of these votes.  If seated as required, these Affiliate Trustees should have received notice of the Board meetings, its intended votes, and enjoyed right as full Board members to vote on the proposals at hand.

42. As of June 2021, only one Affiliate Trustee, Chris Washington, remained on the BOT.  See Ex. 1.

43. When the BOT votes on an issue affecting governance, its Secretary formally notifies the Howard University student, alumni, and faculty representatives regarding its action(s). Exhibit 4. No such notice exists regarding a Board vote between April 6, 2020, and the present memorializing its approval of the Governance Committee's April 6, 2020 action.

44. On November 5, 2021 the Board voted upon a recommendation from its Audit and Legal Committee to amend Article I, Section 2. Exhibit 4. The Board, having illegally excluded Affiliate Trustee member positions for the previous 17-18 months should have facilitated their elections and seated them well before the November 5, 2021 meeting, ensured that they received proper notice of the June and November meetings, and preserved their equal enfranchisement.

45. Between June 2020 and June 2021 at least five (5) Affiliate Trustee positions, which BOT By-laws required to be seated, remained vacant.

46. The term of one (1) of the two (2) remaining alumni Affiliate Trustee expired one year later in approximately June 2021, leaving six (6) Affiliate Trustee vacancies, including two (2) alumni members.

47. Upon information and belief, at or near the Governance Committee's April 2020 recommendation, and near the March 2020 completion of its Study, the Board retained the consulting services of Independent Educational Services (hereafter "the Consultant" or "IES"), to study the value and need for shared governance at Howard University.

**BOARD VIOLATIONS OF ITS BY-LAWS**

48. According to its By-laws, in April 2020 the Governance Committee lacked the authority to singularly freeze Affiliate Trustee nominations and elections, and to not fill these

respective positions n the BOT.  There is no provision in the By-laws for the suspension of membership on the BOT in emergency situations such as COVID.

49. The Governance Committee's April 6, 2020 "recommendation" effectively halted the process in which the BOT was required to fill the undergraduate and graduate student trustees, the undergraduate and graduate faculty trustees; and as of June 2020, an alumni trustee vacancy.  An additional alumni trustee was required to be filled in June 2021. Id.

50.  While the Governance Committee's April 6, 2020 correspondence claimed that it and/or the BOT were considering alternative ways for Affiliate Trustees to "make positive contributions to University governance," its correspondence omitted that its true intention was the disenfranchisement of Affiliate Trustees.

51. The Governance Committee's action required an appropriate amendment of Article II, Section 8 in accordance with Article VIII's required notice to the entire BOT, including the otherwise excluded Affiliate Trustee members at issue here.

52. At the expiration of respective Affiliate Trustee terms, applicable By-laws at Article I, sections 7 and 8 required stakeholder nominations and elections to be held to fill those specific seats to comply with the By-law membership requirement at Article I, Section 2.

53. Six (6) Affiliate Trustee positions should have been seated as of the BOT's June and November 2021 meetings. Exhibit 1.

54. The BOT's refusal to seat Affiliate Trustee members between June 2020 and November 2021 precluded the BOT from achieving its required Board membership and effectuating notice to all rightful Board members during that time, thereby rendering its June 2021 and November 5, 2021 votes to remove Affiliate Trustees and amend its By-laws at Article I, Section 2 *ultra vires.*

55. No specific details have been disclosed to alumni regarding the substantive details of the Board's June 2021 vote, except that it was "unanimous" and attributed to the finding(s) of IES.  Despite repeated requests from concerned Alumni, the BOT has consistently refused to disclose copies of the final IES findings or BOT minutes regarding its June 2021 vote to exclude Affiliate Trustee members.

56. Between April 20, 2020 and June 23, 2021, there was little communication from the BOT with Howard alumni regarding the IES consultation.  Further, the BOT has refused to reverse its June vote, and now its November 2021 vote in which it illegally amended its By-laws to permanently exclude Affiliate Trustees.

### THE BOARD CHAIRMAN'S JUNE 2021 ANNOUNCEMENT

57. On June 14, 2021, 14 months after the April 6, 2020, Governance Committee freeze on Affiliate Trustee nominations and elections, Board Chairman Lawrence Morse (hereafter "Morse") announced that the BOT had *unanimously* changed the Board's governance structure.  It did not, however, amend its By-laws.  The Board's July 13, 2021 notice indicated its June 11, 2021 approval of Board Officer *Election* Results and recommendation for approval of the "Governance Recommendation on Board Restructuring,"  Ex. 3. .

58. Chairman Morse stated in his remarks that since 2020 the BOT had engaged in the process of evaluating best practices for boards and that it used the services of IES, an external consulting firm with a specialization in higher education board governance, to assist with this process.  No date was given as to when the BOT retained IES; nor did the Chairman disclose the consultant's written findings.

59. Chairman Morse also stated that certain alumni and students would prospectively serve on BOT Committees at the pleasure of the BOT.  They would, however, no longer enjoy full trustee status, which included voting rights.

60. The BOT's actions implicate the specific meeting notices which it gave to BOT members for its June and November 2021 Board meetings, particularly the latter meeting notice regarding amending its By-laws.   That notice is required to comply with Article 8 which requires notice to be sent to all Board members.

61. According to Article I, Sections 2, 7 and 8, all Howard University students, faculty, and alumni "shall" be included among the BOT's membership.  Absent an amendment to the By-laws, the BOT did not have the authority to exclude Affiliate Trustees from the BOT between April 2020 and November 5, 2021.

62. The BOT routinely ignored its By-laws, minimized its shared governance mandate, and disenfranchised Affiliate Trustees.

### THE BOARD'S ILLEGAL EXCLUSION OF AFFILIATE TRUSTEES

63. There was no valid and legitimate BOT vote whatsoever on the Governance Committee's April 2020 "recommendation" and *de facto* removal of Affiliate Trustee positions from the BOT.  Moreover, there was no notice to the entire BOT membership pertinent to the June 11, 2021 and November 5, 2021 BOT meetings.

64. The effective exclusion of Affiliate Trustee members from being seated to preclude their participation as full board members in the June and November elections   violated Alumni rights under the BOT By-laws and was *ultra-vires*.

## ALUMNI DEMAND BOARD TRANSPARENCY AND ACCOUNTABILITY

65. Before filing this action, Plaintiffs, among others, attempted unsuccessfully to amicably resolve this matter by directly communicating their concerns to the BOT.

66. On or about June 25, 2021, ten (10) former graduate and undergraduate student trustees who served between 2008 and 2021 sent a letter to the BOT regarding its action. These former BOT members stated as follows about the Board's June 2021 unanimous vote:

> We were founded in the midst of a social climate that rejected diversity in higher education, from the student body, to faculty, and even board membership. The Board's recent decision seems to reject that history. Our founders endeavored to reject leading higher education models and to create a space where we could do things differently. They recognized something that we are affirming today: "difference does not mean deficient.

> They added:

> Furthermore, we are concerned about the context in which this "unanimous" vote took place – without student and faculty trustee participation. As mentioned, nominees for the undergraduate and graduate student trustee position were elected during the Spring 2020 elections. Neither student was granted the standard confirmatory interview with the Board's Governance Committee. Even throughout the 2020-2021 academic year, those students were still not granted an interview. As the Board pursued its governance review, no student or faculty trustee were present during the Board's confidential discussions on this matter. Even consultation with former student trustees, in a separate forum, cannot substitute sitting, voting student trustees participating in the Board's deliberations and final vote. More importantly, it is hard to escape the less-than-ideal optics of the board pushing this matter forward in the midst of a global pandemic when no student or faculty were on campus or were granted the opportunity to offer contemporaneous arguments. Ex. 5.

67. The balance of their letter highlighted the value that Student Trustees bring to the BOT and urged the BOT to reverse its decision.

68. In July 2021 more than thirty-five (35) alumni from the classes of 1960 through 2020, all former student government leaders, including former Affiliate Trustees and several of the

immediate plaintiffs, sent a collaborative seven-page letter to the BOT which articulated

its forceful opposition to the BOT's June 2021 decision.  Ex.6..

69. The July 2021 letter reminded the BOT of the sacred history of University's "Shared

Governance" from 1926 to the present, including the University's 2009 and 2020 Self-

studies.

As noted earlier, shared governance has been a part of Howard University since 1926, with
a significant expansion in 1970. Affiliate Trustees representing alumni, faculty, and
students have thus participated in the governance of the University during some of the
University's most critical time periods. Their voices and points of view have helped to
shape the present-day Howard University. We believe that a continuation of shared
governance is critical in shaping the future of Howard University. The Affiliate Trustee
structure ensures that alumni, faculty, and students will have a continued guaranteed voice
in the development of the University's policies and procedures.

....

Based on the above, we request that the Board take action immediately to reverse its
decision to eliminate Affiliate Trustees.

Request for Documents

Consistent with the duty to inform stakeholders about the most important decision to
impact them in recent years, we request and strongly urge that the Board produce the
following documents as soon as possible:
1. The IES report.
2. The Board and committee minutes which cover the deliberations and the subsequent
decision to eliminate Affiliate Trustees.
3. The Board Bylaws in effect at the time the decision was made to eliminate Affiliate
Trustees; and
4. Any newly revised Board By-laws.

70. The Board tersely responded to the concerned Alumni plea and offered a one-hour

"listening session" with a "hard stop" at 60 minutes, all the while indicating that it had no

intention whatsoever of reconsidering its vote to exclude Affiliate Trustees. It further

refused to honor the request to disclose the IES Report, BOT and Governance Committee

minutes, and any newly revised By-laws.

71. On October 15, 2021, former student government leaders sent a second letter to the BOT urging reconsideration of its June 2021 vote:

> This letter is being sent as a follow-up to our letter to you dated July 15, 2021 (see attachment). The primary purpose of this letter is to request again that the Board of Trustees (the "Board") take immediate action to reverse its decision to eliminate Affiliate Trustees from membership on the Board. As we expressed in our initial letter, shared governance has been a part of Howard University since the 1920s, and the voices and points of view of alumni, students, and faculty on the Board have helped to shape the present day Howard University. We believe that a continuation of shared governance is critical in shaping the future of the University. Ex. 7.

72. The BOT never responded to the October 2021 letter.

73.  Despite the procedural infirmities of its disenfranchisement of Affiliate Trustee members and persistent stakeholder urgings for transparency and accountability, the BOT has stubbornly defended the violation of its governing By-laws to the detriments of thousands of Alumni. Its actions leave concerned alumni stakeholders with no meaningful recourse but judicial intervention to compel its compliance with its rules of governance.

## CAUSE OF ACTION

### COUNT I—DECLARATORY JUDGMENT

74. Plaintiffs incorporate by reference the substance of all the foregoing factual allegations.

75. This is an action, derivative in nature, for a declaratory judgment brought to determine questions of actual controversy between the parties and to terminate the controversy rooted in the alleged violations by the BOT of its By-laws which give rise to this proceeding.

76. From April 2020 through November 5, 2021 the BOT should include duly elected Affiliate Trustee members who are required to be elected and seated in accordance with Article I, Sections 2, 7, and 8,  y

77. Given the Governance Committee's illegal April 2020 freeze of the Affiliate Trustee nomination/election processes, all subsequent votes in which these positions were unfilled precluded proper notice to the entire BOT.

78.  Defendant BOT's Governance Committee violated its then applicable 2018 By-laws when it decided in April 2020 not to suspend filling five (5) Affiliate Trustee BOT vacancies and an additional Alumni Trustee vacancy after June 30, 2021.

79. The BOT's purported June 2021 and November 5, 2021 votes did not include the required entire board membership, and thus were *ultra vires*.

80. Plaintiffs, as have all Alumni who enjoy voting rights for Affiliate Trustees, have been harmed by Defendants' unlawful actions including, but not limited to, deprivation of their rightful nominations, elections, and seating on the BOT in compliance with Article I, Sections 2, 7, and 8 of the still applicable 2018 By-laws, as well as other provisions therein.

81. There exists, therefore, an actual controversy concerning justiciable issues between the Plaintiffs and Defendants within the jurisdiction of this Court.

82. Plaintiffs are entitled to a judgment declaring its rights as Howard University Alumni regarding the Board's compliance with its By-laws and further, settling the parties' legal relations, rights, and responsibilities.

WHEREFORE, the Plaintiffs respectfully demand:

(a) That this Honorable Court issue an Order declaring that the April 2020 Governance Committee's *"recommendation"* and action halting the nomination/election/seating of Affiliate Trustee Board Members violated applicable By-laws at Article 1, Sections 2, 7, and 8, and Article VIII;

(b) That all Affiliate Trustee positions entitled to have been nominated, elected, and seated between April 20, 2020, and November 5, 2021, should have occurred and that those seats should have been filled consistent with applicable terms of office and BOT By-laws at Articles I, Sections 2, 7, and 8.

(c) That the BOT's June 2021 and November 5, 2021 votes excluding Affiliate Trustees, and which amended Article I, Section 2, among other By-law provisions, be declared null and void and of no lawful effect; and

(d)  That the Court award Plaintiffs such other and further relief as in law and equity they may be entitled.

Respectfully submitted,

*/s/ Donald Temple*

Donald M. Temple #408749
1310 L Street, NW, Suite 750
Washington, D.C. 20005
Tel:  (202) 628-1101
dtemplelaw@gmail.com

# E X H I B I T

# 1

 

# 2 of 7 Affiliate Trustees Seated at the time of BOT June 11, 2021 vote

| AFFILIATE TRUSTEE BOARD SEATS | 2017 - 2018 AY | 2018 - 2019 AY | 2019 - 2020 AY | 2020 - 2021 AY |
|---|---|---|---|---|
| Undergraduate Student Trustee | Ms. Ashley Grey | Ms. Julia Osagie | Mr. Marquis Taylor | VACANT |
| Graduate Student Trustee | Mr. Adedamola Sokoya | Ms. Angela Brennan | Mr. Travis Randle | VACANT |
| Undergraduate Faculty Trustee | Dr. Moses Garuba | VACANT | VACANT | VACANT |
| Graduate Faculty Trustee | Dr. Marsha A. Echols | Dr. Marsha A. Echols | Dr. Marsha A. Echols | VACANT |
| Alumni Trustee | Dr. Danette G. Howard | Ms. Jill B. Louis | Ms. Jill B. Louis | Ms. Jill B. Louis |
| Alumni Trustee | Ms. Stefanie Brown James | Ms. Stefanie Brown James | Mr. Chris Washington | Mr. Chris Washington |
| Alumni Trustee | Mr. Eugene "Rock" Newman | Mr. Eugene "Rock" Newman | Mr. Eugene "Rock" Newman | VACANT |

 

# Timeline of Board Actions leading up to June 11th vote

**June 7, 2013**

In a letter published by *The Chronicle of Higher Education* the Vice Chair of the Board emphasizes a significant change in the BOT governance structure without discussion or voting.

**January 24, 2015**

The BOT make an excerpt to the Bylaws amending Section 8 a. Faculty Trustees (3.k.) "The candidate **nominees** receiving the **two highest** number of votes with at least a combined 30 percent plurality shall be referred by the Secretary to the Governance Committee." Prior to the excerpt, the Bylaws (amended January 25, 2014) stated, "The candidate **nominee** receiving the **highest** number of votes with at least a 30 percent plurality in the run-off shall be referred by the Secretary to the Governance Committee."

**October 26, 2018**

Bylaws amended to say in Section 8 (a) (2.j) (3.k.) (4.j) "Except under extraordinary circumstances, the Board will give full consideration and priority to the nominee receiving the highest number of votes."

**June 11, 2021**

The BOT vote to remove the Affiliate Trustee Positions from the Board; **Only 2** of 7 Affiliate Trustees are seated at the time of the vote. The other 5 seats (2 students, 2 faculty, and 1 alumni) are vacant.

| 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 |
|------|------|------|------|------|------|------|------|------|

**February 27, 2015**

A resignation letter by the Graduate Faculty Trustee emphasizes how in the January 24, 2015 vote amending the Bylaws "an omnibus motion from the audit and legal committee was the manner in which the…affiliate trustee elections occurred…there was no prior discussion with the affiliate trustees by this committee…"

**February 27, 2018**

An Alumni Trustee is elected as a General Trustee while still serving their term as an Alumni Trustee (until June 30, 2018).

**November 13, 2019**

BOT elects four new members (Alumni Trustee, Undergraduate and Graduate Student Trustees, and General Trustee); The Undergraduate Faculty Trustee is not announced though seat has been vacant for a year; The Alumni Trustee elected received the *second highest* number of votes among the two candidate nominees forwarded to the Governance Committee on May 15, 2019.

**October 23, 2018**

BOT elects three new members (Alumni Trustee, General Trustee, and Undergraduate Student Trustee); The Undergraduate Faculty Trustee is not announced though seat is vacant.

# EXHIBIT

# 2

View this email in your browser

 **HOWARD UNIVERSITY**    Office of University Communications



April 6, 2020

Dear Howard University Community,

As you know, the country is in a midst of an unprecedented global public health crisis as a result of the COVID-19 pandemic. Among the unprecedented actions the University has taken in response is the evacuation of the campus, except for essential personnel, and the migration of all classroom instruction to a remote learning platform. The Board of Trustees has been engaged as these decisions were made for the health and safety of every member of the Howard Community and the surrounding neighborhood. This pandemic threatens to alter normal operations of this University and higher education in general for a very long time, if not permanently.

In an effort to be forward-looking and strategic so that Howard University is

Trustees is reviewing multiple issues regarding oversight of the University and engagement with our various stakeholders. While these considerations are underway and given the urgent business at hand in addressing COVID-19, the Committee has asked the Board of Trustees to pause on adding any new Board members including via elections for affiliate trustees. These deliberations will take into account how to assure that our critical stakeholders can make the most positive contributions towards University governance, as well as how the Board of Trustees should benefit from the most diverse and comprehensive experiences and views available.

The Governance Committee has notified the Office of Alumni Relations on behalf of the alumni trustee election and the Faculty Senate Committee on Committees on behalf of the faculty trustee election of this decision. In addition, the Governance Committee will not recommend any new general trustees for election to the Board until further notice.

The Board values the input of all University stakeholders and is committed to engaging the current elected leaders of the Howard University Student Association (HUSA), the Howard University Alumni Association (HUAA), the Faculty Senate and the Howard University Staff Organization (HUSO) as they continue the stewardship of the University through this very difficult period.

We appreciate the many ways in which the Howard University Community has rallied and been supportive of the University and one another during these difficult and extraordinary times. We thank you for all that you do.

Governance Committee
Howard University Board of Trustees

 

**Office of University Communications**
**2225 Georgia Ave NW**
**Washington, DC 20059**

Tra

This email was sent to kylie.burke@bison.howard.edu
*why did I get this?*   unsubscribe from this list   update subscription preferences
Howard University · 2225 Georgia Ave NW · Washington, DC 20059-1014 · USA

# EXHIBIT

# 3



**HOWARD
UNIVERSITY**

Secretary of the Board of Trustees

**MEMORANDUM**

**TO:**      Howard University Community

**FROM:**   Christie L. Taylor
            Secretary of the Board of Trustees, *Effective June 21, 2021*

            Florence W. Prioleau, Esq.
            Senior Vice President and General Counsel

**DATE:**   July 13, 2021

**SUBJECT:** Actions Approved by the Howard University Board of Trustees
            at its June 11, 2021 Meeting

**CC:**     Stakeholder Group Leadership (Distribution Attached)

This memorandum summarizes the actions taken by the Howard University Board of Trustees during the
June 11, 2021, meeting.

**<u>BOARD ACTIONS</u>**

- The Board approved the following recommendations from the Academic Excellence Committee:

  - Recommendation 102-2021: Center for Digital Business in the School of Business
  - Recommendation 105-2021: Center for Applied Data Science and Analytics
  - Recommendation 106-2021: Establishment of the Department of Comprehensive Care in
    the College of Dentistry
  - Recommendation 107-2021: Closure of the Classics Department
  - Recommendation 108-2021: Closure of the Comprehensive Sciences Department
  - Recommendation 109-2021: Establishment of the Center for HBCU Research, Leadership,
    and Policy

- The Board approved the following recommendations from the Development Committee:

  - Recommendation to Establish the Dr. Abraham Pishevar Endowed Chair in Finance in
    the Howard University School of Business
  - Recommendation Regarding the Establishment and Funding of the Knight Foundation
    Endowed Chair in Race and Journalism
  - Resolutions Granting the President Authority to Sign Two Gift Agreements Each Valued
    in Excess of $5 Million



2400 Sixth Street, NW • Suite 405
Washington, DC 20059

(202) 806 2250
Fax (202) 806 2269
www.howard.edu

- The Board approved the following recommendations of the Finance Committee:

  - Recommendation Regarding the Funding of the Sterling A. Brown Endowed Chair in English and the Humanities
  - Recommendation to Approve International Dentist Program Fees Adjustment for Summer 2021Cohort
  - Recommendation to Approve the University and HUH FY 2022 Operating Budgets
  - Recommendation to Approve the University FY 2022 Renewal and Replacement Program

- The Board approved the Facilities and Real Estate and Executive Committee Resolution to Enter into the Development Agreement for the Monetization of the Property Known as Bond Bread Factory and WRECO Garage.

- The Board approved the following recommendations of the Governance Committee:

  - Recommendation for Approval of Board Officers Election Results
  - Recommendation for Approval of the Governance Recommendation on Board Restructuring
  - Recommendation to accord Benaree P. Wiley the Honor of Trustee Emerita Status.

- The Board approved the *In Memoriam* Resolutions. The Board authorized an expression of sympathy on its behalf in response to the passing of members of the Howard University community. This expression, upon approval of the Board, is entered into the permanent historical record of Howard University as part of the official minutes of the Board.

- The Board approved the Treasurer's Report.


cc:   Laurence C. Morse, Ph.D., Chairman
      Wayne A. I. Frederick, M.D., MBA, President

Distribution:

- Howard University Student Association (HUSA)
  Kylie Burke (She/Her), President

- Graduate Student Assembly
  Ashley Grey, Chair

- Howard University Alumni Association (HUAA)
  Charlie Lewis, President

- Faculty Senate
  Dr. Marcus Alfred, Chair

- HU Staff Organization (HUSO)
  Monique Yvette McClung, President

# EXHIBIT

# 4



**HOWARD
UNIVERSITY**

Office of the Secretary

**MEMORANDUM**

| | |
|---|---|
| TO: | Howard University Community |
| FROM: | Christie L. Taylor |
| | Secretary of the Board of Trustees |
| DATE: | November 18, 2021 |
| SUBJECT: | Actions Approved by the Howard University |
| | Board of Trustees at its November 5, 2021 Meeting |
| CC: | Stakeholder Group Leadership (Distribution Attached) |

This memorandum summarizes the actions taken by the Howard University Board of Trustees during the November 5, 2021 meeting.

**BOARD ACTIONS: NOVEMBER 5, 2021**

The Board approved the following recommendations from the Academic Excellence Committee:

- Recommendation 202-2021: Establishment of the **Online Master of Social Work (MSW) Degree Program**.
- Recommendation 203-2021: **Discontinuance of the Bachelor of Arts degree program in French** offered by the College of Arts and Sciences (COAS).
- Recommendation 204-2021: **Discontinuance of the Bachelor of Arts Degree Program in Art History** offered by the College of Arts and Sciences (COAS).
- Recommendation 205-2021: **Discontinuance of the Certificate of Advanced Graduate Study (C.A.G.S.)** offered by the School of Education.
- Recommendation 206-2021: **Establishmemnt of the Social Justice Professional Development Certificate** to be offered by the College of Arts and Sciences.
- Recommendation 207-2021: **Establishment of the Center for Equitable Economy & Sustainable Society**.

The Board approved the following recommendations from the Audit and Legal Committee:

- Recommendation to **Amend the Bylaws of the Howard University Board of Trustees**.
- Recommendation to **Amend the Howard University Alumni Association Constitution**.



The Board approved the following recommendations from the Development and Alumni Relations Committee:

- Resolution to **fund the Center for Economy & Sustainable Society**

The Board approved the following resolution from Governance Committee:

- Resolution to **Establish a Trustee Candidate Advisory Council.**
- Recommendation to **Elect Two (2) trustees pending successful completion of background checks.**

The Board approved the following resolution:

- Resolution **1) authorizing the following five board members of the Howard University Hospital, Inc. – Trustees Baylor-Henry, Christian, Hale, Johns, and Tuckson – to approve the appointment of and issuance of credentials to the medical and dental staff, subject to reataification by the Board of Trustees, until the acquisiton of HUH by Adventist Health Care; and 2) ratifying the credentialing decisions made at October 22, 2021 meeting.**

The Board approved three resolutions from the Finance Committee relating the University's financial affairs.

The Board approved the **November 2021 Death Resolutions**. The Board authorized an expression of sympathy on its behalf in response to the passing of members of the Howard University community.  This expression, upon approval of the Board, is entered into the permanent historical record of Howard University as part of the official minutes of the Board.


cc:     Laurence C. Morse Chairman
        Wayne A. I. Frederick, M.D., MBA, President

Distribution:

- Howard University Student Association (HUSA)
  Kylie Burke (She/Her), President

- Graduate Student Assembly
  Ashley Grey, Chair

- Howard University Alumni Association (HUAA)
  Charlie Lewis, President

- Faculty Senate
  Dr. Marcus Alfred, Chair

- HU Staff Organization (HUSO)
  Monique Yvette McClung, President

# EXHIBIT

# 5

<u>Preserving Our Values - A Letter from Former Student Trustees to Howard University</u>

To Chairman Morse and the members of the Howard University Board of Trustees:

We, the undersigned, former student trustees (including the elected, yet unseated student trustee who would have served this past term) pen this letter to advocate for the continued existence of the affiliate trustees in light of the Board's June 11, 2021 vote to eliminate the student, faculty, and alumni trustee positions. Every action taken by the Board is a statement of the University's values. Unfortunately, the Board's recent vote diverges from its commitment to "reflect ... values of equity, diversity, and inclusion." For over 50 years, Howard University has realized these values through an inclusive governance model. The inclusion of student, faculty, and alumni trustees have fostered an environment of dialogue and mutual learning.  This model has been an exemplar in higher education, re-emphasizing the importance of student, faculty, and alumni input to the University's strategic growth. However, the Board's recent decision appears to signal to students, faculty, and alumni that their contributions to the University's governance was, at best, inconsequential and ceremonial. In this note, we seek to inform you and the Howard community of the necessity of student trustees to a modern, progressive HBCU board of trustees.

**<u>Embracing Our Unique Tradition</u>**
In its' statement to the Howard community, the Board noted that its decision was inspired by a need to "look for governance models that are closely aligned with peer leading-edge institutions." While we are not clear as to which institutions the Board is benchmarking, what is clear is that those institutions do not have the unique history, legacy, and value proposition as Howard University. We were founded in the midst of a social climate that rejected diversity in higher education, from the student body, to faculty, and even board membership. The Board's recent decision seems to reject that history. Our founders endeavoured to reject the "leading" higher education models and to create a space where we could do things differently. They recognized something that we are are reaffirming today: "difference" does not mean "deficient."

However, the Board's decision seems to value *following* other institutions as opposed to continuing what we have done for 154 years -- *leading* other institutions by displaying the value and institutional benefit of *our* unique model. But Howard is not alone. The Board's statement did not account for institutions like <u>Harvard, Princeton, Cornell</u> , <u>Brown</u>, and <u>American University</u> whose boards include affiliate trustees. Its statement further discounts the numerous other HBCUs -- our true peer institutions -- like <u>Spelman</u>, <u>Morehouse</u> and <u>Tuskegee</u> who offer similar opportunities. Without context, we do not see benchmarking other institutions as a fruitful basis for changing our governance model.

## Making Change without Stakeholder Input

Furthermore, we are concerned about the context in which this "unanimous" vote took place -- without student and faculty trustee participation. As mentioned, nominees for the undergraduate and graduate student trustee positions were elected during the Spring 2020 elections. Neither student was granted the standard confirmatory interview with the Board's Governance Committee. Even throughout the 2020-2021 academic year, those students were still not granted an interview. As the Board pursued its governance review, no student or faculty trustees were present during the Board's confidential discussions on this matter. Even consultation with former student trustees, in a separate forum, cannot substitute sitting, voting student trustees participating in the Board's deliberations and final vote. More importantly, it is hard to escape the less-than-ideal optics of the Board pushing this matter forward in the midst of a global pandemic when no students or faculty were on campus or were granted the opportunity to offer contemporaneous arguments.

## Value Brought by Student Trustees

Student trustees bring incredible value to the Board of Trustees and the institution's governance. Below are a few examples of student trustees' value added:

1. Due to election by their peers, student trustees are best equipped to increase engagement and participation for the town halls, dinners, and forums that the Board has expressed as more effective means of stakeholder engagement. Student trustees are important sounding boards as the Board and administration seek to build communication avenues with the student body.

2. Student trustees bring a unique and unifying perspective to decision-making. As voting members, student trustees operate with an exacting nuance and provide necessary context to the Board's confidential deliberations. Finding common ground between the University's strategic initiatives and student concerns is the exact result that flows from empowering students with fiduciary responsibilities. As such, piecemeal inclusion of students in non-confidential spaces, where they are not able to engage in lengthy discussions and lack access to privileged infomation, is a less effective governance model.

3. Several student trustees have gone above and beyond and raised money or further assisted the University's development efforts including the establishment of the Lavender Fund and a successful 2011 Text to Give campaign that produced new small dollar donors, among other initiatives.

4. Board service by student trustees has created meaningful opportunities for the University to cultivate some of its most prominent alumni (e.g., Kasim Reed).

5. Howard University's inclusive governance structure has made the University a leader in the field of stakeholder engagement and inclusion.

**Next Steps**

**Recommendation**
In light of student trustees's tremendous value to Board and University- at large, we are calling on the Board to reverse its decision and reinstate the student trustee positions. In addition, we recommend the following adjustments to further strengthen the student trustee model:

1. Increase the student trustee term to two (2) years, allowing for more practical governance experience and adding more continuity to student representation on the Board. This two-year structure has been adopted by several of the institutions mentioned earlier.

**Questions & Formal Requests**
Ahead of the announced town hall meeting, we are asking President Frederick and the Board of Trustees to provide specific, written responses to the following questions and requests that have been expressed by many in the Howard community.

**Questions:**
1. Chairman Morse said that this decision was based on the need to mirror "best practices" of a modern university. Does the Board believe the universities discussed previously, who have affiliate trustees, are not "leading" institutions on the cutting edge of governance "best practices?"

2. Chairman Morse mentioned that the Board's structure had not changed in 50 years and needed reform. Please detail all other necessary governance changes that were made as a result of the June 11, 2020 vote.

3. Was the removal of the affiliate trustees the only governance change that the Board made during its June 11, 2020 vote?

4. How have the affiliate trustees prevented the Board from being "more efficient with initiatives such as strategic planning and Howard Forward?"

5. How will removing affiliate trustees provide more efficiency?

6. What were the recommendations of the expert(s)/independent consulting firm with respect to retaining student, faculty and alumni trustees as part of the Board's membership?

**Requests:**
We respectfully request the following from the Board of Trustees:

1. Immediate reinstatement of all voting, affiliate trustee positions;

2. Public release of the expert(s)/ independent consulting firm's report orr recommendations to the Board of Trustees, along with the firm's background information including professional and demographic data of the individuals conducting the review via the Howard University website and email to the Howard University community by this Friday, June 25, 2020 at 12 noon; and

3. A formal, written response to the enumerated questions and recommendation listed above, via the Howard University website and email to the Howard University community, by this Friday, June 25, 2020 at 12 noon.

**<u>Conclusion</u>**
In conclusion, removing voting student trustees is tantamount to silencing student voices and does not move Howard Forward. The lesson from the past year's events and tragedies is resoundingly clear: more diverse voices, not less, make any society and institution stronger.

Signed ,

Brent Drenon, Graduate Trustee- Elect, 2020-2021
Travis L. Randle, Graduate Trustee, 2019-2020
Marquis Taylor, Undergraduate Trustee, 2019-2020
Angela Brennan, Esq., Graduate Trustee 2018-2019
Julia Osagie, Undergraduate Trustee, 2018-2019

Ashley Grey, Undergraduate Trustee, 2017-2018
Jasmine Morris, Undergraduate Trustee, 2016-2017
Christopher N. Cross, Graduate Trustee, 2015-2016
Marcus Ware, Graduate Trustee, 2010-2011
Victoria Kirby, Undergraduate Trustee, 2008-2009

# EXHIBIT

# 6

**CONCERNED FORMER HOWARD UNIVERSITY AFFILIATE TRUSTEES
AND FORMER STUDENT LEADERS**

<u>VIA EMAIL</u>

July 15, 2021

Dr. Laurence C. Morse, Ph.D.
Chairman
Howard University Board of Trustees
2400 Sixth Street, NW
Washington, D. C.  20059

Re: Revised Governance Structure

Dr. Morse:

This letter is being sent by the undersigned in response to the recently announced changes to the governance structure of the Howard University Board of Trustees (the "Board").

<u>Announced Changes and Rationale for the Same</u>

On June 18, 2021, you forwarded an email to Howard University faculty, students, and alumni announcing that a virtual town hall would be held on June 23rd.  According to your email, the purpose of the town hall was to discuss recently announced changes to the governance structure of the Board.  Faculty, students and alumni were encouraged to register for the town hall and to submit questions in advance since no questions would be accepted during the town hall.  You indicated that you invited feedback on the subject and that the Board would continue to solicit a broad range of perspectives.  You concluded the announcement with the following statement: "An open and honest dialogue with our community is essential as we bring about the desired change to the board and to the University."

During the town hall, you and the other Trustees stated that since last year, the Board has been engaged in the process of evaluating best practices for boards and that it used the services of IES, an external consulting firm with a specialization in higher education board governance, to assist with this process.  Based on your comments, it appears that the primary focus of the evaluation process was the Affiliate Trustee positions, namely Alumni, Faculty and Student Trustees.  You provided the following information, presumably from the IES report: (1) the Affiliate Trustee positions create an inherent conflict of interest since each Affiliate Trustee is elected by a stakeholder group; the result is that Affiliate Trustees vote on behalf of their respective stakeholder groups rather than in the best interests of Howard University; (2) the purpose of the Affiliate Trustee is to expand communications with each respective stakeholder group, but this purpose is not being met with the current Affiliate Trustee structure; (3) approximately forty plus stakeholders, including students, alumni, faculty, and former trustees were

interviewed (none of whom were identified), and the consensus from this group was that the current Board governance structure is not working[1]; and (4) over 70% of universities do not have shared governance. Presumably based on the foregoing, you stated that in February 2021, IES made the recommendation to the Board to eliminate the Affiliate Trustee positions. You further stated that in June 2021, all twenty Board members who participated in, we assume, a telephonic meeting voted to adopt the recommendation.

You stated during the town hall that in lieu of Affiliate Trustee positions, various Board committees will now include members of various stakeholder groups who will have voting privileges on the committees, and that the Board plans to change its Bylaws to incorporate this proposal. You indicated that this is a better approach since most Board work is done through its committee structure and the Board rarely takes action against the recommendations coming from the various committees. In addition, you stated that alumni will be able to self-nominate themselves or others for the Board and will be eligible for consideration by Deans for membership on the Board of Visitors for each school.

History of Shared Governance at Howard University

Howard University has a rich history of shared governance. In or about 1926 and continuing to the present, Alumni have served as Trustees on the Board. Due in large part to student protests, in 1970, the Board voted to add Student and Faculty Trustees to its membership. The Board's Bylaws and other University governance documents provide for three Alumni Trustees, two Faculty Trustees, and two Student Trustees on the Board, each nominated by their respective constituencies.

The significance of Alumni Trustees was acknowledged by Dr. Rayford W. Logan in his historical account about Howard University. In summarizing the history of the Alumni of the University and its relationship to the Board of Trustees, he stated the following: **"Probably the most important step to improve the relations of the Alumni with the University was the election of Alumni Trustees by the Alumni. Previous chapters have narrated at length the dissatisfaction of the General Alumni Association with the procedures for electing the Trustees, especially the fact that the Board of Trustees was not bound to elect the Alumnus with the largest number of votes from among the three highest names in the final nomination by the Alumni. The long and, at times, acrimonious expressions of dissatisfaction help one to appreciate the significance of this new procedure."** *Howard University, The First Hundred Years, 1867 – 1967*, p. 514.

The importance of Affiliate Trustees has been addressed in at least three studies. In October 1974, Arthur D. Little, Inc. issued a report, the *"Comprehensive Study of the University's Governance and Management,"* to the University ("1974 Report"). The 1974 Report specifically embraced a governance structure which includes Affiliate

---

[1] We contacted several former Affiliate Trustees, and none of them indicated that they were contacted by IES. Neither the alumni nor any of the faculty we identified who were interviewed by IES had any discussions regarding the elimination of Affiliate Trustees.

Trustees when it recommended the following regarding policy formulation: ". . .we **suggest that student and faculty participation in actual policy formulation be focused where it is now, in the hands of elected student and faculty Trustees acting as equals with the other Trustees on the Board.**" The 1974 Report further noted that the Board adequately represents the University's internal constituencies, especially after the Board added Faculty and Student Trustees to its membership. Finally, it was noted that Board policy prohibits any Trustee from functioning as an advocate of a special interest group or constituency. 1974 Report, pages 22, 24, 36.

In September 2009, the University issued *"Howard University, 2009 Self-Study Report"* ("2009 Report") to the Middle States Association of Colleges and Schools Commission on Higher Education. The 2009 Report also embraced the concept of shared governance and summarized the membership of the Board as comprised of 35 authorized voting members of whom seven were designated "Constituent Trustees" (previous designation for "Affiliate Trustees"), including three alumni, two faculty and two students, each nominated by their respective constituencies. **The 2009 Report acknowledged that the Board's membership comprises a governing body that is capable of fulfilling its fiduciary responsibilities and made a significant point that "Because Board membership includes the President and constituent representatives (alumni, faculty, and students), all stakeholders are involved in the University's decision-making process."** Key findings in the 2009 Report regarding the University's leadership and governance were that "The University's governing documents provide for a structure which complies with the leadership and governance principles set forth in the *Characteristics of Excellence in Higher Education.*" Finally, none of the recommendations for improvement in the 2009 Report involved any changes to the Constituent Trustee category. 2009 Report, pages 47, 49, 52.

The third study was conducted by the University in preparation for the accreditation review by the Middle States Commission on Higher Education ("MSCHE"). The University issued *"Howard University, MSCHE Self-Study Report 2020"* in March 2020 ("2020 Report"). The 2020 Report reviewed the governance structure at Howard University and stated that the University has a tradition of shared authority and responsibility, including the election of students and faculty to the Board of Trustees. It noted that the leadership of the University supports the principle of shared governance and the **"adherence to shared governance invites the voices of internal constituents in key decisions. . .Howard University's governing structure incorporates policies that directly support its stated mission and core values."** Based on the foregoing, one of the key findings of the 2020 Report was that "Howard University embraces the **concept of shared governance; its leadership has been deliberate about including all stakeholders in major decision-making.**" 2020 Report, pages 89-90, 94-95, 100.

Given the significance of shared governance to stakeholders and the extraordinary history surrounding this issue, notably repeated major student protests in 1968, 1974, 1989, and 2018, we remain concerned as to whether the Board, the Governance Committee of the Board, and/or IES considered this extensive history when the recommendation and decision were made to eliminate the Affiliate Trustee positions.

3

<u>Rationale for Retaining Shared Governance at Howard University</u>

During the town hall, you articulated the following five reasons why Howard University should eliminate the Affiliate Trustee positions. We do not believe that those reasons justify the restructuring as set forth below:

1. <u>Affiliate Trustee positions create an inherent conflict of interest</u>. The election of Affiliate Trustees by their respective stakeholder groups does not create an inherent conflict of interest. First, Board policy prohibits any Trustee from functioning as an advocate for any constituent group. The orientation provided to all new Trustees and the "oath" signed by all Trustees reinforce that policy. Second, similar to elected federal, state, and local officials, Affiliate Trustees can concurrently serve as representatives of their particular constituent group and exercise independent judgment in the best interests of Howard University. We note that General Trustees are not immune from potential conflicts of interest and that integrity does not depend upon status or category.

2. <u>Purpose of Affiliate Trustee is to expand communications with the stakeholder group</u>. The purpose of an Affiliate Trustee is not to expand communications with each respective stakeholder group, although that may be a byproduct of service on the Board. The purpose of an Affiliate Trustee is to serve and make informed decisions, as other General Trustees, in the best interests of Howard University, and to ensure that the interests and viewpoints of the stakeholder groups are considered, when appropriate.

3. <u>Consensus of interviewed stakeholders is that current Board governance structure is not working</u>. IES interviewed approximately 40 plus stakeholders during the review process. You indicated that there was a consensus amongst these interviewees that the current Board governance structure is not working. We believe that soliciting the opinions of 40 plus stakeholders was wholly inadequate and should not be used as a basis for such a drastic decision as the elimination of Affiliate Trustees. In addition, it is unclear the types of stakeholders who were interviewed. We have communicated with many stakeholders, including former Affiliate Trustees, alumni, current students and faculty, and former faculty, and most of them were not interviewed. Those who were interviewed have reported that IES never addressed the topic of Affiliate Trustees. We believe more effective approaches should have been used to ascertain the views of a larger number of stakeholders, such as mass emails, surveys, and a series of town halls, **prior to the time the decision was made to eliminate the Affiliate Trustee positions.**

4. <u>Most universities do not have shared governance</u>. You stated that over 70% of universities do not have shared governance. Seventy percent of universities do not have the history, mission, or values of Howard University. This is not an appropriate justification for the elimination of shared governance and is of highest concern.

   We acknowledge and are aware that most universities either do not have shared governance or have other models which do not include Affiliate Trustees with voting

4

rights. As you know, however, Howard University is a unique institution and deserves to retain its unique governance structure. As a national rather than a local institution, Howard has borne the burden of carrying the past into the future since it was chartered by Congress on March 2, 1867. The circumstances of the past have changed over the past 154 years since the founding of Howard University, but the challenges of the future have remained ever present. To have our unique model of shared governance eliminated does a disservice to both the past, present and future student, faculty, and alum. In 2021, given the current climate to suppress the voices and votes of millions, now is not the time to eliminate one of the unique qualities of Howard University.

In addition, since the 1974 Report, the 2009 report, and the 2020 Report all embrace and affirm shared governance, it is remarkable that an outside consultant would recommend, and the Board adopt, a policy to eliminate Affiliate Trustees. It is also a major concern that the affirmation of shared governance included in the 2009 Report and the 2020 Report which were submitted by the University to MSCHE would have been relied upon by MSCHE in the continued accreditation of Howard University.

5. <u>A better approach is to include members of stakeholder groups on Board committees.</u> In lieu of Affiliate Trustees, you stated that a better approach is to include members of stakeholder groups as voting members on Board committees since a majority of Board deliberations are completed at the committee level. This rationale does not take into account the fact that committees merely make recommendations to the Board, and that the Board may or may not adopt the recommendations. More importantly, limiting stakeholder membership at the committee level diminishes significantly the role of stakeholders in the development of policies and procedures for Howard University. It has the effect of disenfranchising the various stakeholder groups. Taking away the voting rights of these groups is antithetical to Howard's history, mission and values.

Affiliate Trustees provide Howard University with immeasurable benefits, such as the following: (a) the unique perspective of the students who are, in fact, the real reason for the existence of the University; (b) the insights and expertise of the faculty who serve as the academic foundation of the University; and (c) the life experiences of alumni who use their talents and resources to benefit Howard University and its tremendous legacy.

In March 2017, the Association of Governing Boards of Universities and Colleges ("AGB") issued a white paper, *"Shared Governance: Changing with the Times,"* in which the AGB assessed shared governance in general terms. The AGB first stated that shared governance is one of the basic tenets of higher education and defined the concept as the process by which various constituents contribute to the decision-making process related to a university's policies and procedures. The AGB emphasized that when shared governance is done well, it (1) strengthens the quality of leadership and decision-making at the institution, (2) enhances the institution's ability to achieve its vision and meet strategic goals, (3) increases the odds that the very best thinking by all parties is brought to bear on institutional challenges, (4) engenders an institutional culture of collective ownership and accountability for the institution's present and future, and (5) facilitates

the implementation of institutional decisions. In addition, the AGB stated that the critical components for a successful and effective shared governance structure are the following: trust, collaboration, communication, transparency, inclusiveness, honesty, and integrity.

As noted earlier, shared governance has been a part of Howard University since 1926, with a significant expansion in 1970. Affiliate Trustees representing alumni, faculty, and students have thus participated in the governance of the University during some of the University's most critical time periods. Their voices and points of view have helped to shape the present day Howard University. **We believe that a continuation of shared governance is critical in shaping the future of Howard University.** The Affiliate Trustee structure ensures that alumni, faculty and students will have a continued guaranteed voice in the development of the University's policies and procedures.

At a time when efforts are being made throughout the country to systematically disenfranchise African Americans and other persons of color of the right to vote, Howard University should be leading the way by guaranteeing full equal voting rights for the Affiliate Trustees on the Board. As Alumna and Madam Vice President Kamala Harris recently stated on campus: *"Your vote is your power, and I say don't ever let anyone take your power from you."* Howard University, Office of University Communications, July 8, 2021.

**Based on the above, we request that the Board take action immediately to reverse its decision to eliminate Affiliate Trustees.**

<u>Request for Documents</u>

Consistent with the duty to inform stakeholders about the most important decision to impact them in recent years, we request and strongly urge that the Board produce the following documents as soon as possible:

1. The IES report;

2. The Board and committee minutes which cover the deliberations and the subsequent decision to eliminate Affiliate Trustees;

3. The Board Bylaws in effect at the time the decision was made to eliminate Affiliate Trustees; and

4. Any newly revised Board Bylaws.

Respectively submitted by:

Concerned Howard University Stakeholders (see attached list of signatories)

cc:     Members of the Board
        President Wayne A. I. Frederick
        Christie Taylor, Secretary of the Board

6

## SIGNATORIES OF CONCERNED HOWARD UNIVERSITY STAKEHOLDERS

Freddie Lewis Archer; President, Hartford Alumni Club (1980s); Freshman Class Representative, Liberal Arts Student Council (1968-1969)

Charles N. Atkins, Esq.; Undergraduate Student Trustee (1973-1975)

Margo Bouchet, Esq.; HUAA Vice President for Membership (2010s); HUAA Region VI Chair (2000s)

Dedan K. Bruner, Esq.; Graduate Student Trustee (2006-2007)

Christopher D. Cathcart; HUSA President (1984-1985)

Paul Cotton, Ph.D; Alumni Trustee (2009-2012)

David Dupree, Esq.; Undergraduate Student Trustee (1979-1980)

Aprille J. Ericsson, Ph.D.; Alumni Trustee (2004-2010)

Edward A. Hailes, Jr., Esq.; Vice President, Liberal Arts Student Council (1975-1976)

Willie Hampton; Undergraduate Student Trustee (1975-1976)

Sam Hutchinson, Esq.; Vice President of Liberal Arts Student Council (1970-1971); Jr. Class President (1969-1970)

Jonathan Hutto, Sr.; Undergraduate Student Trustee (1998-1999); HUSA President (1997-1998)

Candice Jacko, Alumni Trustee (2002-2008)

Manotti Jenkins, Esq.; HUSA Vice President (1984-1985)

Timothy L. Jenkins, Esq.; Alumni Trustee; President of the Liberal Arts Student Council; Special Counsel to President James Cheek

Bill "Damani" Keene; Alumni Trustee (2014-2017)

Randal Mangham, Esq.; Graduate Student Trustee (1978-1980); HUSA Student Representative (1970s)

Alfred Mathewson; President, School of Business Student Council (1970s); HUSA Financial Advisor (1970s)

James H. Mayo, II, Esq.; HUAA Region VI Chair (1990s-2002); President, San Francisco Bay Area Alumni Club (1980s)

Anita D. Stearns Mayo, Esq.; Alumni Trustee (2008-2011); HUAA President (2000-2004)

Rock Newman; Alumni Trustee (2017-2020)

Willie-Lloyd Reeves, Esq.; Liberal Arts Representative to HUSA (1968-1969); Freshman Representative to Liberal Arts Student Council (1967-1968)

Sellano L. Simmons, Esq.; Graduate Student Trustee (2005-2006); HUSA President (2000-2001)

Jabari Smith; Undergraduate Student Trustee (2006-2007

Donald Temple, Esq.; Vice President, Undergraduate Student Association (1974-1975); Representative, Undergraduate Student Association (1973-1974)

Walter J. Woods, Jr., Esq.; HUSA President (1981-1982)

8

# EXHIBIT

# 7

# HOWARD ALUMNI UNITED

<u>VIA EMAIL</u>

October 15, 2021

Dr. Laurence C. Morse
Chairman
Howard University Board of Trustees
2400 Sixth Street, NW
Washington, D. C.  20059

Re: Revised Governance Structure

Dr. Morse:

This letter is being sent as a follow-up to our letter to you dated July 15, 2021 (see attachment). **The primary purpose of this letter is to request again that the Board of Trustees (the "Board") take immediate action to reverse its decision to eliminate Affiliate Trustees from membership on the Board.** As we expressed in our initial letter, shared governance has been a part of Howard University since the 1920s, and the voices and points of view of alumni, students, and faculty on the Board have helped to shape the present day Howard University. We believe that a continuation of shared governance is critical in shaping the future of the University.

As we noted in our prior letter, Affiliate Trustees provide Howard University with immeasurable benefits: (a) the unique perspective of the students who are, in fact, the real reason for the existence of the University; (b) the insights and expertise of the faculty who serve as the academic foundation of the University; and (c) the life experiences of alumni who use their talents and resources to benefit Howard University and its tremendous legacy.

<u>Request for Documents</u>

We also restate our request that the Board produce the following documents to us as soon as possible:

1.  The IES report;

2.  The Board and committee minutes which cover the deliberations and the subsequent decision to eliminate Affiliate Trustees;

3.  The Board Bylaws in effect at the time the decision was made to eliminate Affiliate Trustees; and

4.  Any newly revised Board Bylaws.

Since our initial communication to you, we have received tremendous support from alumni and other University stakeholders, including the HU Faculty Senate and students. This groundswell of support has resulted in the creation of "Howard Alumni United" and more than 1,600 signatories on our petition demanding the reversal of this decision. Our support continues to grow online and on social media.

We remain hopeful that the Board will reinstate the Affiliate Trustee positions with full membership on the Board.

**See attachment for additional supporters of our original letter to you and the Board.**

Respectively submitted by:

Howard Alumni United

cc:     Members of the Board
        President Wayne A. I. Frederick
        Christie Taylor, Secretary of the Board

## ADDITIONAL SUPPORTERS OF JULY 15, 2021 LETTER TO BOARD OF TRUSTEES

Jade Agudosi; HUSA President (2017-2018)

Dr. Ewart F. Brown; HUSA President (1967-1968)

Mwalimu Sandra E. Brown; HUAA President (2004-2008)

William M. Brown, III; President, HU Alumni Club of New Jersey (2014-2016)

Glenn B. Frizell; HU Alumni Club of Greater Kansas City (2020-2021)

Cheryl E. Green; Treasurer, HU Alumni Club of Greater Washington, D. C. (late 1980s)

Helen L. Higginbotham, Esq.; President, Graduate School of Business Student Association (1991-1992)

Dr. John K. Holton; President of the Liberal Arts Student Council (1970-1971); HUSA Senator (1969-1970)

Marilyn Hoosen; HUSA President (1999-2000); President, International Student Association (1998-1999); President, International Pals (1997-1998); President, African Students Association (1996-1997)

Rachel Howell; HUSA President (2020-2021)

Eric Hughes; First Undergraduate Student Trustee (1970-1971); HUSA Senator, Liberal Arts (1968-1969)

Jean Walburg Humphrey; President, HU Alumni Club of Greater Washington, D. C. (2003-2007); President, HUAA of Greater Greensboro (1989-1993); HUAA President (1984-1988); HUAA Vice President (1982-1984); President, HU Alumni Club of Greater Atlanta (1979-1981)

Amos Jackson, III; HUSA President (2018-2019)

Sheila A. Maddox; Alumni Trustee (1993-1996); President, HU Alumni Club of Greater Atlanta (1989-1991); Vice President, HU Alumni Club of Greater Atlanta (1987-1989)

Quentin Mansfield; HUSA Vice President (2017-2018)

April R. Silver; HUSA President (1990-1991)

Louis E. Sterling, III; Undergraduate Trustee (1999-2000)

Marquis Taylor; Undergraduate Trustee (2019-2020)

3

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH
INFORMATION SHEET

Timothy Jenkins, et al.                    Case Number: _2021 CA 004729 B_

vs                                          Date: _____

Howard University, Inc. et al.             ☐ One of the defendants is being sued
                                             in their official capacity.

| Name: *(Please Print)* | Relationship to Lawsuit |
|---|---|
| Donald M. Temple | ☒ Attorney for Plaintiff |
| Firm Name: | ☐ Self (Pro Se) |
| Temple Law Offices | |
| Telephone No.:  Six digit Unified Bar No.: | ☐ Other: _____ |
| 202-628-1101    408749 | |

TYPE OF CASE: ☐ Non-Jury    ☒ 6 Person Jury        ☐ 12 Person Jury
Demand: $Declaratory Judgment    Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____    Judge:_____    Calendar #:_____

Case No.:_____    Judge:_____    Calendar#:_____

---

**NATURE OF SUIT:**    *(Check One Box Only)*

**A. CONTRACTS**                    **COLLECTION CASES**

☐ 01 Breach of Contract          ☐ 14 Under $25,000 Pltf. Grants Consent  ☐ 16 Under $25,000 Consent Denied
☐ 02 Breach of Warranty          ☐ 17 OVER $25,000 Pltf. Grants Consent   ☐ 18 OVER $25,000 Consent Denied
☐ 06 Negotiable Instrument       ☐ 27 Insurance/Subrogation               ☐ 26 Insurance/Subrogation
☐ 07 Personal Property                Over $25,000 Pltf. Grants Consent         Over $25,000 Consent Denied
☐ 13 Employment Discrimination   ☐ 07 Insurance/Subrogation               ☐ 34 Insurance/Subrogation
☐ 15 Special Education Fees           Under $25,000 Pltf. Grants Consent        Under $25,000 Consent Denied
                                 ☐ 28 Motion to Confirm Arbitration
                                      Award (Collection Cases Only)

**B. PROPERTY TORTS**

☐ 01 Automobile                  ☐ 03 Destruction of Private Property     ☐ 05 Trespass
☐ 02 Conversion                  ☐ 04 Property Damage
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

**C. PERSONAL TORTS**

☐ 01 Abuse of Process            ☐ 10 Invasion of Privacy                 ☐ 17 Personal Injury- (Not Automobile,
☐ 02 Alienation of Affection     ☐ 11 Libel and Slander                        Not Malpractice)
☐ 03 Assault and Battery         ☐ 12 Malicious Interference              ☐ 18 Wrongful Death (Not Malpractice)
☐ 04 Automobile- Personal Injury ☐ 13 Malicious Prosecution              ☐ 19 Wrongful Eviction
☐ 05 Deceit (Misrepresentation)  ☐ 14 Malpractice Legal                  ☐ 20 Friendly Suit
☐ 06 False Accusation            ☐ 15 Malpractice Medical (Including Wrongful Death)  ☐ 21 Asbestos
☐ 07 False Arrest                ☐ 16 Negligence- (Not Automobile,       ☐ 22 Toxic/Mass Torts
☐ 08 Fraud                            Not Malpractice)                    ☐ 23 Tobacco
                                                                          ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE        IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☒ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-1 (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

12/3/2021
_____
Date

CV-496/ June 2015



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

TIMOTHY JENKINS, et al.
_____
Plaintiff

vs.                                                     Case Number   2021 CA 004729 B

HOWARD UNIVERSITY, INC., et al.
_____
Defendant

## SUMMONS

To the above named Defendant: Howard University, Inc.
2400 6th Street, N.W. Washington, DC 20059

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Donald M.Temple, Esq.
_____
Name of Plaintiff's Attorney

1310 L Street, N.W. #750
_____
Address

Washington, DC 20005
_____

202-628-1101
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date   12/21/2021
_____

如需翻译，请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오.        ኣስተርጓሚ ከፈለጉ ስልክ ይደውሉ (202) 879-4828   파즈수    

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                        Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                        Demandante

            contra

                                        Número de Caso: _____

_____
                        Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

                                        Por: _____
_____                      Subsecretario
Dirección

                                        Fecha _____
_____
Teléfono
如需翻譯，請打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면 (202)879-4828 로 조회하시기 바랍니다      የትርጉም እርዳታ ከፈለጉ (202) 879-4828 ይደውሉ

**IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.***

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedirayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                        Super. Ct. Civ. R. 4



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

TIMOTHY JENKINS, et al.
_____
                                    Plaintiff

vs.                                                    Case Number  2021 CA 004729 B

HOWARD UNIVERSITY, INC., et al.
_____
                                    Defendant

**SUMMONS**

To the above named Defendant: Board of Trustees of Howard University
C/O Secretary of the Board 2400 6th Street, N.W. Washington, DC 20059

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Donald M.Temple, Esq.
_____
Name of Plaintiff's Attorney

1310 L Street, N.W. #750
_____          By _____
Address                                                                      Deputy Clerk
Washington, DC 20005

202-628-1101
_____          Date   12/21/2021
Telephone

*Clerk of the Court*

如需語言,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오.      ፖኅፐይ ፕርፖ ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                                      Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                                    Demandante

          contra                                    Número de Caso: _____

_____
                                    Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                    *SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

                                    Por: _____
_____
Dirección                                              Subsecretario

_____

                                    Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828로 전화해 주십시오        ያማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                    Super. Ct. Civ. R. 4



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

TIMOTHY JENKINS et al
    Vs.                            C.A. No.     2021 CA 004729 B
HOWARD UNIVERSITY, INC. et al

### INITIAL ORDER AND ADDENDUM

#### Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

(1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of (a) the summons, (b) the complaint, and (c) this Initial Order and Addendum. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

(3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

(4) At the time stated below, all counsel and unrepresented parties shall participate in a remote hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients **before** the hearing whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this hearing.**

(5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

**Chief Judge Anita M. Josey-Herring**

Case Assigned to:  Judge JASON PARK
Date:       December 17, 2021
Initial Conference: **REMOTE HEARING - DO NOT COME TO COURTHOUSE**
**SEE REMOTE HEARING INSTRUCTIONS ATTACHED TO INITIAL ORDER**

9:30 am, Friday, March 18, 2022
Location:  Courtroom 519
              500 Indiana Avenue N.W.
              WASHINGTON, DC 20001

                CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

D.C. Code § 16-2821, which part of the Medical Malpractice Proceedings Act of 2006, provides,   "[a]fter action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ('ISSC'"), prior to any further litigation in an effort to reach a settlement agreement.   The early mediation schedule shall be included in the Scheduling Order following the ISSC.   Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.   Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/.   To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available.   Both forms may be obtained at www.dccourts.gov/medmalmediation.   One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.   Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. Unrepresented plaintiffs who elect not to eFile must either mail the form to the Multi-Door Dispute Resolution Office at, Suite 2900, 410 E Street, N.W., Washington, DC 20001, or deliver if in person if the Office is open for in-person visits.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation.   D.C. Code § 16-2823(a).   If the parties cannot agree on a mediator, the Court will appoint one.   D.C. Code § 16-2823(b).

The following people are required by D.C. Code § 16-2824 to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826.   Any Plaintiff who is unrepresented may mail the form to the Civil Actions Branch at [address] or deliver it in person if the Branch is open for in-person visits. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Anita M. Josey-Herring

CAIO-60

Civil Remote Hearing Instructions for Participants

The following instructions are for participants who are scheduled to have cases heard before a Civil Judge in a **Remote Courtroom**

**Option1:  (AUDIO ONLY/Dial-in by Phone):**

Toll 1 (844) 992-4762 or (202) 860-2110, enter the Meeting ID from the attachment followed by #, press again to enter session.

⁂    *Please call in no sooner than 5 minutes before your scheduled hearing time. Once you have joined the session, please place your phone on mute until directed otherwise.  If you should happen to get disconnected from the call, please call back in using the phone number and access number provided and the courtroom clerk will mute your call until the appropriate time.*

If you select **Option 2** or **Option 3** use the Audio Alternative

**Option 2: (LAPTOP/ DESKTOP USERS 1):**

Open Web Browser in Google Chrome and copy and paste following address from the next page:
https://dccourts.webex.com/meet/XXXXXXXXX

**Option 3: (LAPTOP/ DESKTOP USERS 2):**

Open Web Browser in Google Chrome and copy and paste following address
https://dccourts.webex.com  Select **Join**, enter the Meeting ID from the next page

AUDIO ALTERNATIVE:  Instead of automatically using **USE COMPUTER FOR AUDIO**, select **CALL-IN** and follow the **CALL-IN** prompt window.  Use a cell phone or desk phone. You will be heard clearer if you **do not** place your phone on SPEAKER. It is very important that you enter the **ACCESS ID #** so that your audio is matched with your video.



**Option 4: (Ipad/SMART PHONE/TABLET):**

- Go to App Store, Download WebEx App (Cisco WebEx Meetings)
- Sign into the App with your Name and Email Address
- Select Join Meeting
- Enter address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX
- Click join and make sure your microphone is muted and your video is unmuted (if you need to be
- seen). If you only need to speak and do not need to be seen, use the audio only option.
- When you are ready click "Join Meeting". If the host has not yet started the meeting, you will be placed in the lobby until the meeting begins.

**For Technical Questions or issues Call: (202) 879-1928, Option #2**

Superior Court of the District of Columbia
Public Access for Remote Court Hearings
(Effective August 24, 2020)

**The current telephone numbers for all remote hearings are: 202-860-2110 (local) or 844-992-4726 (toll free).** After dialing the number, enter the WebEx Meeting ID as shown below for the courtroom. Please click a WebEx Direct URL link below to join the hearing online.

Audio and video recording; taking pictures of remote hearings; and sharing the live or recorded remote hearing by rebroadcasting, live-streaming or otherwise are not allowed

| Division | Courtroom | Types of Hearings Scheduled in Courtroom | Public Access via WebEx | |
| --- | --- | --- | --- | --- |
| | | | **WebEx Direct URL** | **WebEx Meeting ID** |
| Auditor Master | 206 | Auditor Master Hearings | https://dccourts.webex.com/meet/ctbaudmaster | 129 648 5606 |
| Civil | 100 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb100 | 129 846 4145 |
| | 205 | Foreclosure Matters | https://dccourts.webex.com/meet/ctb205 | 129 814 7399 |
| | 212 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb212 | 129 440 9070 |
| | 214 | Title 47 Tax Liens; and Foreclosure Hearings | https://dccourts.webex.com/meet/ctb214 | 129 942 2620 |
| | 219 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb219 | 129 315 2924 |
| | 221 | Civil 1 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb221 | 129 493 5162 |
| | 318 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb318 | 129 801 7169 |
| | 320 | | https://dccourts.webex.com/meet/ctb320 | 129 226 9879 |

CAIO-60

| 400 | Judge in Chambers Matters including Temporary Restraining Orders, Preliminary Injunctions and Name Changes | https://dccourts.webex.com/meet/ctb400 | 129 339 7379 |
|---|---|---|---|
| 415 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb415 | 129 314 3475 |
| 516 | | https://dccourts.webex.com/meet/ctb516 | 129 776 4396 |
| 517 | | https://dccourts.webex.com/meet/ctb517 | 129 911 6415 |
| 518 | | https://dccourts.webex.com/meet/ctb518 | 129 685 3445 |
| 519 | | https://dccourts.webex.com/meet/ctb519 | 129 705 0412 |
| JM-4 | | https://dccourts.webex.com/meet/ctbjm4 | 129 797 7557 |
| A-47 | Housing Conditions Matters | https://dccourts.webex.com/meet/ctba47 | 129 906 2065 |
| B-52 | Debt Collection and Landlord and Tenant Trials | https://dccourts.webex.com/meet/ctbb52 | 129 793 4102 |
| B-53 | Landlord and Tenant Matters including Lease Violation Hearings and Post Judgment Motions | https://dccourts.webex.com/meet/ctbb53 | 129 913 3728 |
| B-109 | Landlord and Tenant Matters | https://dccourts.webex.com/meet/ctbb109 | 129 127 9276 |
| B-119 | Small Claims Hearings and Trials | https://dccourts.webex.com/meet/ctbb119 | 129 230 4882 |

CAIO-60