UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| TIMOTHY L. JENKINS, *et al.* | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 22-874 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 6, 9 |
| | : | | |
| HOWARD UNIVERSITY, *et al.* | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### DENYING PLAINTIFFS' MOTION TO REMAND

### I. INTRODUCTION

Plaintiffs, alumni of Howard University, brought this action against Howard University ("Howard") and its Board of Trustees (the "Board")[1] in D.C. Superior Court alleging violations of bylaws adopted by the Board pursuant to Howard's charter. Defendants removed the case to this Court, asserting federal jurisdiction under 28 U.S.C. § 1331. Plaintiffs' timely filed motion to remand is now ripe for consideration. For the reasons explained below, the Court denies the motion to remand and orders Plaintiffs to respond to Defendants' motion to dismiss.

### II. BACKGROUND

Howard University was established in the District of Columbia by act of Congress in 1867. *See* 39 Cong. Ch. 162, 14 Stat. 438, 438–39 (Mar. 2, 1867) [hereinafter "Charter"].

---

[1] Plaintiffs' original complaint named "Howard University, Inc." and "Board of Trustees Howard University" as defendants. *See* Compl., ECF No 1-2. The amended complaint names "Howard University, Inc." and "Trustees of its Board of Trustees and the Howard University Board of Trustees" as defendants. *See* Am. Compl., ECF No. 1-1. Though not essential to the present motion, Defendants state that the university's correct name is "The Howard University," and that its Board of Trustees is not a legal entity capable of being sued. *See* Notice of Removal at 1 n.1, ECF No. 1; Defs.' Opp'n to Mot. Remand at 4 ("Defs.' Opp'n"), ECF No. 8-1.

Among other things, Howard's federal charter vests the government of Howard in a board of trustees, which "may enact by-laws not inconsistent with the laws of the United States regulating the government of the corporation." *Id.* at 439.  Howard's bylaws, as amended, address a variety of topics including the election and removal of board members, rules for board meetings, and establishment of committees of the board.  *See* Howard Bylaws, ECF No. 1-3.  The first section of the bylaws, under heading "General Powers of the Board of Trustees," provides that "The Board . . . may exercise all powers and authorities conferred upon the University by its Act of Incorporation ('Charter') and as otherwise permitted by law." *Id.* at 1.

Plaintiffs commenced this action on December 17, 2021 in D.C. Superior Court.  The original complaint sought declaratory relief for alleged violations of Howard's bylaws by the Board based on certain actions the Board took during the COVID-19 pandemic, including votes concerning election of Board members and votes to amend the bylaws.  *See generally* Compl., ECF No. 1-2.  On February 14, 2022, Plaintiffs filed an amended complaint that contained substantially similar allegations but added a claim that the Board's actions also constituted a breach of fiduciary duty.  *See* Am. Compl. at 26–27, ECF No. 1-1.  Defendants removed the case to this Court under 28 U.S.C §§ 1441, 1446 on March 31, 2022, asserting federal question jurisdiction under 28 U.S.C. § 1331.  *See* Notice of Removal, ECF No. 1.  Plaintiffs filed a motion to remand on April 21, 2022.  *See* Mot. Remand, ECF No. 6.  Defendants opposed that motion, *see* ECF No. 8, and also filed a motion to dismiss, *see* ECF No. 7.  Plaintiffs have moved to stay briefing on the motion to dismiss pending disposition of the motion to remand.  *See* Pls.' Mot. Stay, ECF No. 9.

### III.  LEGAL STANDARD

A defendant in a civil action filed in state court may remove the case to federal court if the "the district courts of the United States have original jurisdiction" to hear it.  28 U.S.C. §§ 1441(a), 1446.  After removal, a plaintiff may move to remand the matter to state court, and the court must remand the case if "at any time . . . it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c).  "When a plaintiff seeks to have a case that has been removed to federal court remanded back to state court, the party opposing a motion to remand bears the burden of establishing that subject matter jurisdiction exists in federal court."  *Mizell v. SunTrust Bank*, 26 F. Supp. 3d 80, 84 (D.D.C. 2014) (quotation omitted).  Courts in this District "construe[ ] removal jurisdiction strictly, favoring remand where the propriety of removal is unclear."  *Ballard v. D.C.*, 813 F. Supp. 2d 34, 38 (D.D.C. 2011).  Accordingly, courts "resolve any ambiguities concerning the propriety of removal in favor of remand."  *Busby v. Cap. One, N.A.*, 841 F. Supp. 2d 49, 53 (D.D.C. 2012).

Here, Defendants argue that this Court has subject matter jurisdiction under 28 U.S.C. § 1331, which provides federal district courts with jurisdiction to hear "all civil actions arising under the Constitution, laws, or treaties of the United States."  *See* Notice of Removal at 4.  For a case to arise under federal law, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action," such that the claimed right or immunity "will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another."  *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936); *see Gunn v. Minton*, 568 U.S. 251, 257 (2013) ("[A] case arises under federal law when federal law creates the cause of action asserted.").  This "genuine and present controversy" must be "disclosed upon the face of the complaint."  *Gully*, 299 U.S. at

3

113; *see also Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) ("Under the longstanding well-pleaded complaint rule . . . a suit 'arises under' federal law only when the plaintiff's statement of his own cause of action shows that it is based upon federal law." (internal alterations and quotation omitted)).

Alternatively, "another longstanding, if less frequently encountered, variety of 'arising under' jurisdiction" presents in "certain cases" where state-law claims "implicate significant federal issues." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). This doctrine, which encompasses a "special and small category" of cases, *Empire Healthchoice Assurance v. McVeigh*, 547 U.S. 677, 699 (2006), "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." *Grable*, 545 U.S. at 312. Under this doctrine, which the court will refer to as the *Grable* test, federal jurisdiction over state law claims will lie if the embedded federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

## IV.  ANALYSIS

Defendants rely on the "internal affairs doctrine" to support their claim that federal question jurisdiction lies under the traditional well-pleaded complaint rule. *See* Notice of Removal at 4–5. Generally, the internal affairs doctrine is a "conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). Typically, the applicable law is the law in the "[s]tate of a business' incorporation," *Atherton v. FDIC*, 519 U.S. 213, 224 (1997), though the question of whether or under what circumstances this is required is unsettled, *see id.*

4

(explaining, in the context of a derivative suit against officers and directors of a federally chartered savings association, that "[t]he internal affairs doctrine shows no such need [to create a federal common law standard of care governing such officers and directors], for it seeks only to avoid conflict by requiring that there be a single point of legal reference.  Nothing in that doctrine suggests that the single source of law must be federal."); see also Mohsen Manesh, *The Contested Edges of Internal Affairs*, 87 TENN. L. REV. 251, 274–75 (2020) (explaining that "both scholars and practitioners have questioned the [Delaware Supreme Court's] repeated assertions that the internal affairs doctrine is constitutionally mandated" and regardless that such interpretation is "not binding on state courts elsewhere or any federal court").  Defendants argue forcefully that the doctrine requires application of federal law here, *see* Defs.' Opp'n at 7–8, but the Court need not wade into the complexities of this question because, even accepting *arguendo* Plaintiffs' contrary assertion that state law governs, the Court finds that federal jurisdiction lies under the *Grable* test.

Taking the first two prongs of the *Grable* test first, the Court finds that Plaintiffs' complaint necessarily raises disputed federal issues.  Most fundamentally, Howard's charter unquestionably has the character of federal law, *see D.C. v. Grp. Hospitalization & Med. Servs., Inc.* ("*GHMSI*"), 576 F. Supp. 2d 51, 54 (D.D.C. 2008) (explaining that because GHMSI's charter "was enacted by Congress" it therefore "constitutes federal law"), and Plaintiffs' claims assume a legal right—to participate in the university's governance—that was created by the charter.  *See* Charter § 4 ("[T]he government of the university shall be vested in a board of trustees . . . .  [I]n them shall be vested the power here in before granted to the corporation.").  Contrary to Plaintiffs' claim that no "nexus exist[s]" between the bylaws and the charter, Pls.' Mem. Supp. Pl.'s Mot. Remand at 4, ECF No. 6-1, the force and effect of the bylaws are a

product of, and circumscribed by, the charter, s*ee* Charter § 3 (empowering Board members to "enact by-laws not inconsistent with the laws of the United States regulating the government of the corporation"); Howard Bylaws at 1 ( "The Board . . . may exercise all powers and authorities conferred upon the University by its Act of Incorporation ('Charter') and as otherwise permitted by law."); *see also Oberly v. Kirby*, 592 A.2d 445, 458 n.6 (Del. 1991) ("[A] corporation's bylaws may never contradict its certificate of incorporation."); *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89 (1987) ("Being the mere creature of law, [a corporation] possess only those properties which the charter of its creation confers upon it . . . ." (citing *Trustees of Dartmouth College v. Woodward*, 4 Wheat. 518, 636 (1819) (Marshall, C.J.))).  In the same vein, while Plaintiffs explicitly allege violations of the bylaws, certain claims depend on the scope of the Board's authority under the charter.  *See, e.g.*, Am. Compl. ¶ 51 ("There is no provision in the by-laws for the suspension of membership on the [Board] in purportedly emergency situations such as COVID."); Defs.' Opp'n at 13 (casting doubt on whether "Plaintiffs' reading of [the] bylaws can be squared with the broad discretion granted to the Trustees under the Charter").

This case finds a close, albeit not airtight, analogy in *GHMSI*, which involved claims that Group Hospitalization and Medical Services, Inc. ("GHMSI"), a federally chartered nonprofit corporation, violated its charter by operating GHMSI "contrary to its public service mission" and using its assets  "inconsistently with [its] charitable purposes." *GHMSI*, 576 F. Supp. 2d at 52–53.  The court held that "[b]ecause plaintiff cannot obtain relief on its state law claims without this Court interpreting [defendant nonprofit's] federal charter, plaintiff's compliant necessarily raises a stated federal issue." *Id.* at 55–56; *accord Carefirst, Inc. v. Taylor*, 235 F. Supp. 3d 724, 738 (D. Md. 2017) (following *GHMSI* to deny motion to dismiss for lack of jurisdiction in a different suit against the same defendant because "GHMSI's charter is a law of the United

States" and therefore "plaintiffs' right to relief 'necessarily depends on resolution of a substantial question of federal law'"). While the complaint in *GHMSI* more precisely identified the disputed section of the charter and the law under which the claims were brought, for the reasons explained above the Court is satisfied that disputed federal issues are similarly implicated by claims that are levied against a university and Board established by a federal charter, that assert a right to participate in internal governance entrusted to the Board by the federal charter, and that allege *ultra vires* actions whose evaluation requires reference to the federal charter. *See Grable*, 545 U.S. at 313 (noting that the "kaleidoscopic situations that present a federal issue" require "a common-sense accommodation of judgement" in the jurisdictional analysis (quotations omitted)). [2]

Moving to the third prong of the *Grable* test—whether the embedded federal issue is substantial—the Court again finds in the affirmative. An issue is substantial if it "indicat[es] a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313. While the issue's significance is evaluated in relation to the "federal system as a whole," *Gunn*, 568 U.S. at 260, there is no threshold number of people or expanse of

---

[2] Plaintiffs attempt to distinguish *GHMSI* through use of a misleadingly selective and misquoted section of a footnote in the opinion that is at best neutral. *See* Pls.' Reply at 6, ECF No. 11. The quote refers to the Supreme Court's holding that a federal charter automatically confers federal question jurisdiction "if, but only if" a sue-and-be-sued provision in the charter "specifically mentions the federal courts." *Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247, 255 (1992). The *GHMSI* court then explained, however, that the absence of such language in the charter is not determinative, as "[f]ederal question jurisdiction may still exist because it is 'a separate and independent jurisdictional grant' from the jurisdictional basis discussed in *Red Cross*." *GHMSI*, 576 F. Supp. 2d at 55 n.2 (citing *Red Cross*, 505 U.S. at 258); *see also* Paul E. Lund, *Federally Chartered Corporations and Federal Jurisdiction*, 36 Fla. St. U. L. Rev. 317, 333–37 (2009) (explaining the *Red Cross* opinion and other jurisdictional hooks for federally chartered corporations but noting that "of course, like any other litigant, a federally chartered corporation may attempt to demonstrate that the particular case to which it is a party is one arising under federal law").

territory that must be affected.  *See, e.g.*, *Grable*, 545 U.S. at 310–11 (finding a substantial federal issue in the question of whether the Internal Revenue Service followed a statutorily prescribed process in seizing an individual corporate plaintiff's property to satisfy a tax delinquency).  Comparison to *GHMSI* is again instructive.  The *GHMSI* court held that the required interpretation of the federal charter presented a substantial issue because it "concerns the core mission and obligations of GHMSI," because it presented a "nearly pure issue of law," because it affected "hundreds of thousands of certificate holders," and because "Congress has indicated its direct interest in the organization by amending GHMSI's charter several times and by authoring committee reports opining on GHMSI's primary mission."  *GHMSI*, 576 F. Supp. 2d at 56 (cleaned up).  Similarly, here, the scope of discretion afforded to the Board under the charter impacts "core" corporate functions.  The required analysis is primarily legal, not "fact-bound and situation-specific" like in the case, rejected by the Supreme Court as insubstantial, of an "insurer's contract-derived claim to be reimbursed from the proceeds of a federal worker's state-court-initiated tort litigation."  *Empire Healthchoice*, 547 U.S. at 701.  The matter's resolution will affect "not only the institution itself, but over 100,000 of Howard's living alumni," in addition to present and future students, faculty, and staff.  Defs.' Opp'n at 13.  And Congress has passed legislation specifically governing certain of Howard's operations, *see* 20 U.S.C. § 121 *et seq.*, including an annual requirement to "report to the Secretary of Education the condition of the institution," including financial information, § 121.  The Court also notes Howard's special significance as a historically Black university founded by Congress in the aftermath of the Civil War.  *See* U.S. DEP'T OF EDUC., FISCAL YEAR 2023 BUDGET SUMMARY at 59, ECF No. 1-8 (showing Howard University as its own line-item and providing the

government's position that "Howard University . . . plays an important role in providing Black or African American students with access to a high-quality postsecondary education").

Finally, and of particular significance to the extent it highlights the unique federal interests at play here, this case is unquestionably "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.  Similar to *GHMSI*, in which the court was comforted by the fact that the defendant was "the only insurer in the nation whose corporate existence is established by congressional charter," Howard appears to be among an exceedingly narrow band of federally chartered institutions of higher learning.[3] *GHMSI*, 576 F. Supp. 2d at 56.  Moreover, even within the limited scope of suits against federally chartered universities, unlike other forms of routine commercial litigation that a university may engage in, only the rare case will involve a challenge like this one that requires interpretation of internal governance documents.  Accordingly, exercising federal jurisdiction here "will portend only a microscopic effect on the federal-state division of labor."  *Grable*, 545 U.S. at 315.

The Court concludes by noting that its jurisdictional decision is no weaker for certain ambiguities in Plaintiffs' pleading.  *See Shapiro v. McManus*, 577 U.S. 39, 45 (2015) ("We have long distinguished between failing to raise a substantial federal question for jurisdictional purposes . . . and failing to state a claim for relief on the merits . . . .").  Despite naming the university itself as a defendant, the Complaint styles itself as a "derivative" suit and throughout refers to alleged violations of the bylaws as "illegal" without reference to any external source of

---

[3] *See, e.g.*, American University (https://www.american.edu/trustees/charter.cfm); Gallaudet University (https://gallaudet.edu/about/history-traditions/); George Washington University (https://trustees.gwu.edu/charter-george-washington-university-text-only); Georgetown University (https://governance.georgetown.edu/charter/).

9

law.  *See* Am. Compl. at 3; *id.* ¶¶ 41, 47, 56, 81, 86.  It makes a single reference to Chapter 29 of the D.C. Code, which governs directors, officers and employees of corporate entities.  *See id*. ¶ 79 ("Standards of conduct for board directors, including university trustees, is governed by D.C. Code, Section 29-406.").  But as Defendants point out, Chapter 29 only applies to nonprofits established in the District of Columbia by act of Congress that affirmatively opt in—something Howard did not do.  *See* D.C. Code Mun. Regs. tit. 17 § 705.1, 705.4 (providing that "nonprofit corporations formed in the District of Columbia by a special act of Congress" may either elect or not elect to "become subject to [Chapter 29]"); *see* Decl. of John G. Gloster Jr., Senior Couns. for Bus. Transactions and Intell. Prop. at Howard ¶ 2, ECF No. 8-2 ("Howard did not elect to become subject to [Chapter 29]"); Attch. A to Defs.' Opp'n, Letter to D.C. Dep't of Consumer and Regul. Affs. (Dec. 9, 2013), ECF No. 8-2 ("Howard University hereby **does not** elect to avail itself of the provisions of [Chapter 29]." (emphasis in original)).  It also bears mention that Chapter 29 provides that, "[i]n any derivative proceeding in the right of a foreign nonprofit corporation, the matters covered by this subchapter shall be governed by the laws of the jurisdiction of incorporation of the foreign corporation."  D.C. Code § 29-411.08.  The Court thus has no basis on which to find that Plaintiffs' spare reference to an inapplicable section of the D.C. Code somehow excises the federal issues from their claims.  This is not a case where Plaintiffs "assiduously avoided" raising federal issues.  *Wash. Consulting Grp. v. Raytheon Tech. Servs. Co.*, 760 F. Supp. 2d 94, 103 (D.D.C. 2011) (citation omitted); c*f. Herero People's Reparations Corp. v Deutsche Banke, A.G.*, 370 F.3d 1192, 1194 (D.C. Cir. 2004) ("[T]he complaint in this case did not explicitly assert that the claims were grounded in federal law. But that cannot be dispositive. . . .  [C]omplaints arising under the laws of the United States, and thus removable under [28 U.S.C.] § 1441, will not necessarily mention federal law.").

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand (ECF No. 6), is **DENIED**.  It is hereby **ORDERED** that Plaintiffs shall respond to Defendants' Motion to Dismiss (ECF No. 7) on or before February 27, 2023.  Plaintiffs' Motion to Stay Consideration of Defendants' Motion to Dismiss (ECF No. 9) is therefore also **DENIED** as moot.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  January 27, 2023                                              RUDOLPH CONTRERAS
                                                                                              United States District Judge