UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TIMOTHY L. JENKINS, *et al.* | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.: 22-0874 (RC) |
| | : | |
| v. | : | Re Document Nos.: 7, 18 |
| | : | |
| HOWARD UNIVERSITY, *et al.* | : | |
| | : | |
| Defendants. | : | |

<u>**MEMORANDUM OPINION**</u>

**DENYING PLAINTIFFS' MOTION TO AMEND COMPLAINT; GRANTING DEFENDANTS' MOTION TO DISMISS**

**I. INTRODUCTION**

Plaintiffs, alumni of Howard University, brought this action against Howard University ("Howard") and its Board of Trustees (the "Board")[1] in D.C. Superior Court alleging violations of bylaws adopted by the Board pursuant to Howard's charter. Defendants removed Plaintiffs' first amended complaint (the "FAC") to this Court and moved to dismiss for failure to state a claim. *See* Notice of Removal; Defs.'s Mot. Dismiss ("Defs.' Mot."), ECF No. 7. Plaintiffs moved to remand, *see* Mot. Remand, ECF No. 6, and requested to stay consideration of the motion to dismiss pending resolution of the motion to remand, *see* Mot. Stay, ECF No. 9. After

---

[1] Plaintiffs' original complaint names "Howard University, Inc." and "Board of Trustees Howard University" as defendants. *See* Compl., ECF No. 1-2. The first amended complaint names "Howard University, Inc." and "Trustees of its Board of Trustees and the Howard University Board of Trustees." *See* 1d Am. Compl., ECF No. 1-1. And the second amended complaint names "The Howard University" and "Trustees of Howard University." *See* 2d Am. Compl. at 4, ECF No. 18-1. The second amended complaint comes after Howard pointed out that the university's correct name is "The Howard University," and that its Board of Trustees is not a legal entity capable of being sued. *See* Notice of Removal at 1 n.1, ECF No. 1; Defs.' Opp'n to Mot. Remand at 4, ECF No. 8-1.

the Court denied the motion to remand and ordered Plaintiffs to respond to the motion to dismiss, *see Jenkins v. Howard Univ.*, No. 22-cv-874, 2023 WL 1070552 (D.D.C. Jan. 27, 2023), Plaintiffs moved for leave to file a second amended complaint (the "SAC"), *see* Pls.' Mot. Leave File 2d Am. Compl., ECF No. 18, and responded to Defendants' motion to dismiss, *see* Pls.' Opp'n to Defs.' Mot. ("Pls.' Opp'n"), ECF No. 20. Both Plaintiffs' motion for leave to file the SAC and Defendants' motion to dismiss are fully briefed. For the reasons set forth below, the Court denies Plaintiffs' motion and grants Defendants' motion.

## II.  BACKGROUND

Howard University was established in the District of Columbia by act of Congress in 1867. *See* 39 Cong. Ch. 162, 14 Stat. 438, 438–39 (Mar. 2, 1867) [hereinafter "Charter"]. Among other things, Howard's federal charter vests the government of Howard in a board of trustees, which "may enact by-laws not inconsistent with the laws of the United States regulating the government of the corporation." *Id.* at 439. Howard's bylaws, as amended, address a variety of topics including the election and removal of board members, rules for board meetings, and establishment of committees of the board. *See* Howard Bylaws, ECF No. 1-3. The first section of the bylaws, under heading "General Powers of the Board of Trustees," provides that "The Board . . . may exercise all powers and authorities conferred upon the University by its Act of Incorporation ('Charter') and as otherwise permitted by law." *Id.* at 1.

Plaintiffs commenced this action on December 17, 2021 in D.C. Superior Court. *See* Compl. The original complaint sought declaratory relief for alleged violations of Howard's bylaws by the Board based on certain actions the Board took during the COVID-19 pandemic, including votes concerning election of Board members and votes to amend the bylaws. *See generally id.* On February 14, 2022, Plaintiffs filed an amended complaint that contained

substantially similar allegations but added a claim for breach of fiduciary duty.  *See* 1d Am. Compl. at 26–27.  On March 31, 2022, Defendants removed the case to this Court under 28 U.S.C §§ 1441, 1446, asserting federal question jurisdiction under 28 U.S.C. § 1331.  *See* Notice of Removal.  Plaintiffs moved to remand on April 21, 2022, *see* Mot. Remand, and Defendants moved to dismiss for failure to state a claim on May 2, 2022, *see* Defs.' Mot.  On May 6, 2022, Plaintiffs filed a motion to stay consideration of the motion to dismiss pending resolution of the motion to remand, *see* Mot. Stay, which Defendants opposed, *see* Defs.' Opp'n to Mot. Stay, ECF No. 10.  Considering Plaintiffs' motion to remand, the Court held that it had federal question jurisdiction under the test articulated in *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).  *See Jenkins*, 2023 WL 1070552, at *2.  The Court also ordered Plaintiffs to respond to Defendants' motion to dismiss on or before February 27, 2023.  *See id.* at *5.  On February 27, 2023, Plaintiffs responded to Defendants' motion to dismiss and also filed a motion for leave to file the SAC.  *See* Pls.' Opp'n; Pls.' Mot. Leave File 2d Am. Compl.

      The SAC differs materially from the FAC.  The FAC is predicated on the assertion that Howard's "[b]y-laws are legally enforceable contracts that outline how the Board will operate its affairs" and "govern the civil dispute here."  1d Am. Compl. ¶ 26.  Though not a model of clarity, it alleges that the Board violated the bylaws in three main ways: (1) it froze the "nomination, election, and seating of affiliate trustees on the [Board] under the emergency pretense of COVID, thereby immediately precluding faculty, students, and alumni trustee membership except for then seated affiliate trustees;" (2) it took a vote in June 2021 "without the excluded" trustees to "eliminate affiliate trustee membership positions," and (3) it took another vote without the "excluded" trustees on November 5, 2021 to amend the bylaws "to exclude affiliate trustees . . . but required affiliate trustee membership being seated on the [Board]."  *Id.*

¶¶ 26, 43.² The FAC states two counts under heading "Causes of Action." *Id.* at 24, 26. The first, labeled "Count I: Declaratory Judgment," alleges that "[t]his is an action, derivative in nature, for a declaratory judgment brought to determine questions of actual controversy between the parties and to terminate the controversy rooted in the alleged violations of the [Board] of its by-laws which give rise to this proceeding." *Id.* ¶ 81. It seeks "a judgment declaring [Plaintiffs'] rights as Howard University Alumni regarding the Board's non-compliance with its by-laws and further, resolving the parties' legal relations, rights, and responsibilities." *Id.* ¶ 89. The second, labeled, "Count II: Breach of Fiduciary Duty," alleges that the Board and its trustees "owe a fiduciary duty to the University and is [*sic*] required to act in good faith consistent with said duty." *Id.* ¶ 91. It argues that the Board's "sanctioning of the violation of its by-laws resulted in the inexcusable exclusion of required alumni, faculty, and student members from board membership and governance" and that its "November 2021 by-law amendment and removal of affiliate trustees after from the [Board]" violated the Board's "[fiduciary] duty to the University." *Id.* ¶¶ 94, 98.

Plaintiffs substitute a new legal theory in the SAC, now contending that Howard's congressional charter "created a contract between the federal government and the university, pursuant to which the University would create and follow its Bylaws as long as they were consistent with the Charter." 2d Am. Compl. ¶ 18. The SAC alleges that, "[i]n establishing [Howard], Congress intended its incorporators to establish a trust to hold and operate the university," and "[a]s a charitable trust, Defendants are required to apply the university's trust res for the public benefit as identified in the Congressional charter, and to manage the governance of

---

² The term "Affiliate Trustees" is defined in the bylaws to mean Board members "nominated as Alumni, Student, or Faculty Trustees." Howard Bylaws at 1-2.

4

the University in a manner that is consistent with perpetual succession." *Id.* ¶¶ 19-20; *see id.* ¶ 24 ("Coupled with Congressional entrustment of resources to the [Board], the appointment of a Board of Trustees, Congress created a contractual Trust relationship with The Howard University to executed [*sic*] and administered by its Board of Trustees.  The intent of the Trust was established by the language of the Charter.").  The SAC also newly alleges that "[i]n 1923-24, Howard Alumni, pursuant to alumni campaign and pressure, entered into an agreement with Defendant University to allow alumni to nominate alumni members," and that "[i]n 1926, the University Board formalized a bylaw amendment to authorize the election of alumni to the Board on a staggered term basis." *Id.* ¶¶ 33, 35.  It claims that "[t]hese Bylaws constituted a contract with Alumni," who "have been a major source of funds needed by sustain [*sic*] Howard in order to educate youth." *Id.* ¶¶ 35–36.

       The SAC also revises the stated causes of action.  First, labeled "Breach of Contract/Third Party Beneficiary Contract," count one alleges that, in response to alumni activism, "and in exchange for continued financial, student recruitment, and other support[] Defendant Howard University entered into two distinct agreements to authorize alumni to sit on its [Board] to the distinct benefit of existing and future alumni," referring to the 1923–24 "agreement" and 1926 bylaw amendment referenced above. *Id.* ¶¶ 108–110.  It alleges that the Board's removal of the affiliate trustees "violated its previous alumni enfranchisement and participatory role in Board governance." *Id.* ¶ 111.  Second, labeled "Breach of Fiduciary Duty and Violation of District of Columbia Uniform Trust Code Individual Named Defendant Board Trustees," count two states that "[a]s a trust operating in the District of Columbia, the individual named defendants and The Howard University are subject to the District of Columbia Uniform Trust Code Section 19-1307." *Id.* ¶ 113.  It alleges that "Defendant Trustees owe a common law

5

and statutory fiduciary duty to the special class of affiliate alumni University [*sic*], and is [*sic*] required to act in good faith consistent with said duty." *Id.* ¶ 115.

### III. LEGAL STANDARDS

#### A. Leave to Amend Complaint

Pursuant to the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within 21 days after serving it, or within a specified amount of time if the pleading is one to which a responsive pleading is required. Fed. R. Civ. P. 15(a)(1). In all other cases, a party may amend its pleading only with the opposing party's consent or the court's leave. Fed. R. Civ. P. 15(a)(2). The decision to grant or deny leave to amend "is committed to a district court's discretion." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam). Leave to amend a complaint should be freely granted by the court "when justice so requires." Fed. R. Civ. P. 15(a)(2).

The D.C. Circuit has held that "it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive[,] repeated failure to cure deficiencies by [previous] amendments[,] or futility of amendment.'" *Firestone*, 76 F.3d at 1208 (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)). Leave to amend may be denied for futility if the amendment "merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002); *see also, e.g.*, *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss."). Leave to amend may be denied for undue delay "when it appears that the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a

6

lost case by untimely suggestion of new theories of recovery, [or] to present theories seriatim in an effort to avoid dismissal." *Nat'l Sec. Couns. v. CIA*, 960 F. Supp. 2d 101, 133 (D.D.C. 2013) (citation omitted). While delay is not undue "[w]here an amendment would do no more than clarify legal theories or make technical corrections," *Harrison v. Rubin*, 174 F.3d 249, 253 (D.C. Cir. 1999), leave to amend is properly denied where a party seeks to "introduce entirely new legal and substantial factual issues to the case." *City of Jersey City v. Consol. Rail Corp.*, 968 F. Supp. 2d 302, 307 (D.D.C. 2013); *see* Wright & Miller, Fed. Prac. and Proc. § 1487 ("[I]f the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial."). Similarly, leave to amend is properly denied "if a party has had sufficient opportunity to state a claim and has failed to do so." *Williamsburg Wax Museum v. Historic Figures*, 810 F.2d 243, 247 (D.C. Cir. 1987); *see Onyewuchi v. Gonzalez*, 267 F.R.D. 417, 420 (D.D.C. 2010) ("Leave to amend is properly denied when the plaintiff was aware of the information underlying the proposed amendment long before moving for leave to amend the complaint.").

### B. Motion to Dismiss

To meet the requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. In addition, while the Court must treat the complaint's factual allegations as true and draw reasonable inferences in plaintiffs' favor, the Court need not accept "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint, nor legal conclusions cast in the form of factual allegations." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (internal quotations omitted); *see Ctr. for Biological Diversity v. Bernhardt*, 442 F. Supp. 3d 97, 103 (D.D.C. 2020) ("A court need not accept a plaintiff's legal conclusions as true, nor must a court presume the veracity of legal conclusions that are couched as factual allegations." (cleaned up)). "In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice.'" *Miango v. Dem. Rep. Congo*, 243 F. Supp. 3d 113, 124 (D.D.C 2017) (citation omitted). Courts "may also disregard 'the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice.'" *Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 92 (D.D.C. 2021) (quoting *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004)).

## IV.  ANALYSIS

### A.  Motion for Leave to File the SAC

Because Plaintiffs' proposed SAC would not withstand a motion to dismiss and reflects undue delay, the Court denies leave to file the amended pleading under Fed. R. Civ. P. 15(a)(2).

1. Futility

a. *SAC Fails to State a Claim for Breach of Contract*

Plaintiffs' claim for breach of contract hinges on the existence of an enforceable contract in the first place. Because Plaintiffs have failed to sufficiently allege the existence of an enforceable contract, their attempt to amend the complaint to substitute in a claim for breach of contract would be futile.

To reiterate, the SAC alleges that the Board entered into two contracts with Howard alumni. First, it alleges that "[i]n 1923–24, Howard Alumni, pursuant to alumni campaign and pressure, entered into an agreement with Defendant University to allow alumni to nominate alumni members." 2d Am. Compl. ¶ 33. Beyond repeating this assertion, *see id.* ¶ 52, the only other substantive reference to the alleged 1923–24 agreement—which appears under the section alleging the breach of contract count—suggests that it more narrowly "authorize[d] the first alumni trustee for the 1924–25 year." *Id.* ¶ 109. Second, the SAC alleges that "[i]n 1926, the University Board formalized a bylaw amendment to authorize the election of alumni to the Board on a staggered term basis," and that this "constituted a contract with Alumni." *Id.* ¶ 35. It repeats this allegation twice without providing more detail as to the terms of the alleged contract. *See id.* ¶¶ 52, 110.

In D.C., "[t]o prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).[3] "For a contract to be enforceable, the parties must (1) express an intent to be

---

[3] The parties appear to agree that D.C. law applies. *See* Defs.' Opp'n to Pls.' Mot. Leave File 2d Am. Compl. ("Defs.' Opp'n") at 14, ECF No. 23 (applying D.C. law of contract formation); Pls' Reply Supp. Mot. Leave File 2d Am. Compl. ("Pls.' Reply") at 12, ECF No. 24

bound, (2) agree to all material terms, and (3) assume mutual obligations." *Dyer v. Bilaal*, 983 A.2d 349, 356 (D.C. 2009). Whether an agreement exists as to material terms "is most clearly evidenced by the terms of a signed written agreement," but, in the absence of an agreement, "the parties' acts at the time of the making of the contract are also indicative of a meeting of the minds." *United House of Prayer for All People v. Therrien Waddell*, 112 A.3d 330, 338 (D.C. 2015) (cleaned up). "'[T]he party asserting the existence of a contract has the burden of proof on that issue.'" *Eastbanc, Inc. v. Georgetown Park Ass'n II*, 940 A.2d 996, 1002 (D.C. 2008) (quoting *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995)). "A contract must be sufficiently definite as to its material terms (which include, *e.g.,* subject matter, price, payment terms, quantity, quality, and duration) that the promises and performance to be rendered by each party are reasonably certain." *Id.* (quoting *Rosenthal v. Nat'l Produce Co.*, 573 A.2d 365, 370 (D.C. 1990)).

Plaintiffs' conclusory references to the 1923–24 "agreement with Defendant University to allow alumni to nominate alumni members," 2d Am. Compl. ¶ 33, fall far short of establishing a presently enforceable contract. Plaintiffs' spare description of the supposed agreement is devoid of details about its nature and scope that could permit a finding that its material terms are "sufficiently definite." *Eastbanc, Inc.,* 940 A.2d at 1002. Indeed, to extent the SAC alleges any material terms of the 1923–24 agreement, it appears to indicate that its subject-matter and

---

(distinguishing the facts of the D.C. Court of Appeals cases cited by Defendants without disputing the applicable law). And the Court's previous finding that it has federal question jurisdiction over this case suggests nothing to the contrary. *See A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1463 (D.C. Cir. 1995) (explaining the "general rule" that "a federal court applies state law when it decides an issue not addressed by federal law, regardless of the source from which the cause of action is deemed to have arisen for the purpose of establishing federal jurisdiction"). Thus, the Court herein applies D.C. law.

duration were limited to the election of "the first alumni trustee for the 1924–25 year," not that it imposes any continuing obligation. 2d Am. Compl. ¶ 109.

Plaintiffs' similarly threadbare allegations concerning the 1926 bylaw amendment are likewise insufficient. Plaintiffs at one point claim that Howard adopted the bylaw "in exchange for continued financial, student recruitment, and other support." 2d Am. Compl. ¶ 108. But other sections of the SAC suggest that this "support" preexisted the bylaw and survives its alleged breach, and therefore is merely the basis for Plaintiffs' apparent expectation that the Board would heed its demands, rather than a discrete obligation constituting consideration for adoption of the 1926 bylaw. *See id.* ¶ 36 ("At that time through the present, Howard alumni have been a major source of funds needed by [*sic*] sustain Howard in order to educate youth. Additionally, throughout its history Howard alumni have played a vital role in recruiting students to Howard and their involvement was critical to the University's early survival."). Moreover, Plaintiffs do not define this "support" or offer any details about what the parties understood it to entail, rendering the promise insufficiently definite, *see Eastbanc*, *Inc.,* 940 A.2d at 1002, perhaps even illusory, *see* Restatement (Second) of Contracts §77 cmt. a (1981).

"Although the relationship between a university and its students can be contractual in nature, a plaintiff must nevertheless 'allege sufficient facts to demonstrate . . . the terms of the contract.'" *Mosby-Nickens v. Howard Univ.*, 864 F. Supp. 2d 93, 98 (D.D.C. 2012) (quoting *Manago v. Dist. of Columbia*, 934 A.2d 925, 927 (D.C. 2007)). Here, in the more attenuated situation of evaluating the relationship between Howard and its *former* students, Plaintiffs have not pled enough information to permit a finding that the parties reached a meeting of the minds and exchanged consideration. *See id.* at 99 (rejecting the argument that Howard's rules and regulations handbook constituted an enforceable contract with a dismissed graduate student

11

because she failed to "demonstrate[] Howard's intent to be bound"); *Samples v. Payne*, No. 18-cv-111, 2019 WL 3412908, at *3 (E.D. Ky. July 29, 2019) (rejecting argument that bylaws of nonprofit alumni association governing officer election and removal process constituted a contract between the association and its former president, as "the bylaws are simply 'rules voted upon and approved by its members to regulate the alumni association'" and "cannot be enforced as a contract because they lack mutuality of obligations").

The SAC also somewhat cryptically contains a single substantive reference to the 1923–24 agreement and the 1926 bylaw amendment as "third-party beneficiary agreements." *See* 2d Am. Compl. ¶ 111. Plaintiffs' other submissions shed little additional light on this theory. Their reply brief contains a subsection titled, "Contract and Third-Party Beneficiary Theory," but only includes one oblique reference to the "third-party beneficiary issue" in the body of the section. Pls.' Reply at 10 ("Critical to the contract and third-party beneficiary issue, Defendants argue that Plaintiffs must plausibly allege a university's intent to be bound by a particular statement creating an obligation."). And at one point later in the section, Plaintiffs seem to abandon the idea that they are third-party beneficiaries entirely. *See id.* at 12 (distinguishing cases cited by Defendants from "the nature of *Plaintiffs* [*sic*] argument and agreements here" (emphasis added)). Even construing this generously as an argument that the 1926 bylaw amendment constitutes an enforceable contract between some undefined group of "alumni" and the Board, 2d Am. Compl. ¶ 110, and that Plaintiffs are third-party beneficiaries of that contract, it still would fail. "Third-party beneficiary status requires that the contracting parties had an express or implied intention to benefit directly the party claiming such status." *Fort Lincoln Civic Ass'n v. Fort Lincoln Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008) (citation omitted). Here, Plaintiffs have not even alleged with specificity who the party in privity with Howard is supposed to have

been or offered any theory as to how the Court could find the existence of an enforceable bilateral contract in the absence of an identified counterparty. *See* Restatement (Second) of Contracts § 9 & cmt. a (1981) (providing that "there must be at least two parties to a contract" and elaborating in a comment that "a person can make a promise to himself, but the law does not provide remedies for breach of such promises."). By extension, the Court has no basis on which to determine the intent of the unknown counterparty at the time of contracting. *See* Williston on Contracts § 37:8 (4th ed.) ("[I]ntent is the principal touchstone for determining whether a third party beneficiary contract exists.").

Because Plaintiffs have not pled sufficient allegations to establish the existence of an enforceable contract, Plaintiffs' proposed amendment to the complaint to add a breach of contract claim would be futile.

### b. SAC Fails to State a Claim for Breach of Fiduciary Duty

Plaintiffs' claim for breach of fiduciary duty hinges on its new theory that Howard is a charitable trust. The Court need not accept this conclusion, *see Ctr. for Biological Diversity*, 442 F. Supp. 3d at 103 ("A court need not accept a plaintiff's legal conclusions as true . . . ."), but even assuming its truth *arguendo*, Plaintiffs would not have standing as beneficiaries to pursue a claim for breach of fiduciary duty.

In the SAC, Plaintiffs contend that, "[i]n establishing the University, Congress intended its incorporators establish [*sic*] a trust to hold and operate the university," and therefore that "the University is governed by the D.C. Uniform Trust Code." 2d Am. Compl. ¶ 19. From here, Plaintiffs assert that "[a]s a charitable trust, Defendants are required to apply the university's trust res for the public benefit as identified in the Congressional charter, and to manage the governance of the University in a manner that is consistent with perpetual succession." *Id.* ¶ 20.

13

Plaintiffs state that the "intent of the Trust was established by the language of the Charter." *Id.* ¶ 24.

Defendants dispute that Howard is a trust and that D.C. trust law would apply if it was. *See* Defs.' Opp'n at 6–11. The Court need not wade into these arguments because, even if Howard was a trust and D.C. trust law did apply, Plaintiffs would lack standing to sue. As the D.C. Court of Appeals has explained,

> [t]hough specific individuals or members of a class of individuals may receive a benefit from time to time, because the interest in ensuring that charitable trust property is put to proper purposes is properly that of the community at large, the traditional rule has been that only a public officer, usually the state Attorney General, has standing to bring an action to enforce the terms of the trust.

*Hooker v. Edes Home*, 579 A.2d 608, 611–12 (D.C. 1990). However, "[a]n exception to the general rule . . . exists in situations where an individual seeking enforcement of the trust has a 'special interest' in continued performance of the trust distinguishable from that of the public at large." *Id.* at 612. But this exception is limited: "a particular class of potential beneficiaries has a special interest in enforcing a trust if the class is sharply defined and its members are limited in number." *Id.* at 614. The "key consideration" is whether "finding a justiciable interest in a given plaintiff would contravene the considerations underlying the traditional rule;" namely, the risk of "vexatious litigation that would result from recognition of a cause of action by any and all of a large number of individuals who might benefit incidentally from the trust." *Fam. Fed'n for World Peace v. Hyun Jin Moon*, 129 A.3d 234, 244 (D.C. 2015) (citation omitted).

In *Hooker*, for example, the D.C. Court of Appeals found that a class composed of female, indigent, elderly widows who were in good health and who had resided in Georgetown for at least five years was sufficiently limited to establish special interest standing to sue a charitable organization chartered by Congress to house "aged and indigent widows" in

14

Georgetown.  *Hooker*, 579 A.2d at 609, 615–16.  Similarly, in *Fam. Fed'n*, the court found that two "ousted former directors" of a charitable corporation who were also successor trustees and "three entities with close interests in the operations of" the corporation had the requisite special interest.  *Family Fed'n*, 129 A.3d at 238 n.2, 244.  By contrast, in *He Depu v. Yahoo! Inc.*, 306 F. Supp. 3d 181 (D.D.C. 2018) the court, citing *Hooker*, found that eight plaintiffs who allegedly were imprisoned in China for online dissent did not have a special interest in a trust established by Yahoo with the alleged "'primary' purpose of providing humanitarian and legal assistance to Chinese dissidents imprisoned for exercising their freedom of expression online."  *Id.* at 186–87, 190–91.  And in *Williams v. Bd. of Trustees*, 589 A.2d 901 (D.C. 1991), the court rejected a claim of special interest in a church by a group who merely regularly attended and financially contributed to it.  *Id.* at 909–910.

To the extent that Plaintiffs describe their special interest at all, it is merely by reference to their status as Howard alumni.  *See* 2d Am. Compl. ¶ 115 ("Defendant Trustees owe a common law and statutory fiduciary duty to the special class of affiliate alumni University [*sic*], and is [*sic*] required to act in good faith consistent with said duty").  To find that anyone in the unlimited class of Howard alumni has standing to sue to enforce the alleged trust would directly contravene the limited membership principles articulated in *Hooker*.  The Court finds that Plaintiffs would lack standing to pursue their claim for breach of fiduciary duty as trust beneficiaries, and therefore that their proposed amendment to the complaint to add this claim would be futile.

### 2.  Undue Delay

While the Court does not deny Plaintiffs' motion on this ground alone, Plaintiffs' delay in seeking to file the SAC also weighs against granting leave to amend.  "Undue delay is a valid

reason to reject a party's attempt to add a new theory of liability to a complaint." *Elkins v. Dist. of Columbia*, 690 F.3d 554, 565 (D.C Cir. 2012). As noted above, "courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, [or] to present theories seriatim in an effort to avoid dismissal." *Nat'l Sec. Couns.*, 960 F. Supp. 2d at 133 (citation omitted). While "there is no undue delay 'where an amendment would do no more than clarify legal theories or make technical corrections,'" the court may deny untimely attempts to make amendments that would "introduce entirely new legal and substantial factual issues to the case." *City of Jersey City*, 968 F. Supp. 2d at 306–07 (quoting *Harrison v. Rubin*, 174 F.3d 249, 253 (D.C. Cir. 1999)). Similarly, "[l]eave to amend is properly denied when the plaintiff was aware of the information underlying the proposed amendment long before moving for leave to amend the complaint." *Onyewuchi*, 267 F.R.D. at 420.

Plaintiffs initiated this case in D.C. Superior Court on December 17, 2021. *See* Compl. They filed the FAC on February 14, 2022, after which Defendants removed the action to this court on March 31, 2022. *See* 1d Am. Compl.; Notice of Removal.[4] Plaintiffs filed a motion to remand on April 21, 2022, which was followed by Defendants' motion to dismiss on May 2, 2022. *See* Mot. Remand; Defs.' Mot. On May 6, Plaintiffs move to stay consideration of Defendants' motion to dismiss pending resolution of the motion to remand. *See* Mot. Stay. Defendants opposed that motion, but Plaintiffs did not submit a response to Defendants' motion to dismiss before the Court directed them to do so in its January 27, 2023 order denying Plaintiffs' motion to remand. *See* Order (Jan. 27, 2023), ECF No. 16. It was not until February

---

[4] Plaintiffs effected service of the first amended complaint on March 2, 2022. *See* Notice of Removal ¶ 7.

27, 2023, the same day they filed their opposition to Defendants' motion to dismiss, that Plaintiffs moved for leave to file the SAC. *See* Pls.' Opp'n; Pls.' Mot. Leave File 2d Am. Compl. In summary, this matter was pending for 26 months, including more than two years since they filed the FAC, before Plaintiffs moved for leave to file the SAC.

Importantly, Plaintiffs were "aware of the information underlying" their proposed amendments "long before moving for leave to amend the complaint." *Onyewuchi*, 267 F.R.D. at 420. Contrary to Plaintiffs' conclusory statement that the Court's opinion denying Plaintiffs' motion to remand confronted Plaintiffs with "newly emerged novel question [*sic*] regarding what body, if any, of applicable federal and/or state law governed the Charter and its application to Defendants' bylaws," *see* Pls.' Reply at 14, the Court's opinion expressly distinguished between its jurisdictional analysis and an eventual merits analysis, *see Jenkins*, 2023 WL 1070552 at *4 (quoting the explanation from *Shapiro v. McManus*, 557 U.S. 39, 45 (2015) that courts "have long distinguished between failing to raise a substantial federal question for jurisdictional purposes . . . and failing to state a claim for relief on the merits"). Moreover, the SAC reveals that Plaintiffs have changed their legal theory based on an updated interpretation of *historical* information about Howard, not based on any *new* information unknowable at the time of filing. *See, e.g.*, 2d Am. Compl. ¶ 15 ("Howard University was founded at the end of the civil war in response to centuries of intellectual deprivation of formerly enslaved Americans of African descent. . . ."); *id.* ¶ 16 ("Howard University was founded to liberate minds of youths from ignorance and superstition, and of [*sic*] developing in them the physical and moral strength necessary for a useful life."); *id.* ¶ 19 (explaining the new theory that, in enacting the charter, "Congress intended its incorporators establish [*sic*] a trust to hold and operate the university"); *id.* ¶ 27 ("Historically included in the proscription of the University Trust is a significant and

meaningful role for its alumni to elect fellow alumni to the [Board], financially support the University, and support University students consistent with the Charter's stated purpose . . . ."); *id.* ¶¶ 32–35 (explaining the new theory that the 1923–24 agreement and the 1926 bylaw amendment constituted enforceable contracts with alumni).

While the prejudice to Defendants caused by Plaintiffs' delay is limited somewhat by the fact that this case has not proceeded to discovery, that Plaintiffs waited almost ten months after Defendants filed their motion to dismiss to seek leave to file a second amended complaint based on information that was knowable at the time the original complaint was filed over two years earlier suggests that Plaintiffs are "present[ing] theories seriatim in an effort to avoid dismissal." *Nat'l Sec. Couns.*, 960 F. Supp. 2d at 133 (citation omitted).

Accordingly, based on futility and undue delay, the Court denies Plaintiffs' motion for leave to file the SAC.

### B. Motion to Dismiss

Having denied leave to file the SAC, the Court returns to the FAC to evaluate Defendants' motion to dismiss.[5]  Defendants' move to dismiss for failure to state a claim as to each of the two counts in the FAC.  *See* Mem. Supp. Defs.' Mot. at 10–31, ECF No. 7-1.  The first count is for a "declaratory judgment," but that is a form of relief, not a cause of action.  1d Am. Compl. at 24; *see C&E Servs. Inc. of Wash. v. D.C. Water and Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (explaining that "the availability of declaratory relief presupposes the existence of a judicially remediable right" (internal alteration and citation omitted)); *Intelsat USA*

---

[5] Plaintiffs' opposition brief "incorporate[s] by reference" and adopts arguments from the SAC.  Pls.' Opp'n at 1; *see id.* at 3 (arguing that what Defendants' motion "ignores, as Plaintiffs now plead in their second amended complaint is that the 1867 Charter effectively created as a congressionally created non-profit trust . . . .").  This renders Plaintiffs' brief largely irrelevant, as the FAC is the operative pleading for purposes of Defendants' motion to dismiss.

*Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 120 (D.D.C. 2013) ("A count for a declaratory judgment 'is not cognizable as a separate cause of action, but is more properly included in the[] prayer for relief.'" (citation omitted)).  Accordingly, because the factual allegations included to support the request for declaratory relief mirror those that form the basis of the second count for breach of fiduciary duty, the Court construes those allegations as in aid of the breach of fiduciary duty claim.  However, because Plaintiffs do not allege that the Board owed a fiduciary duty to Plaintiffs, Plaintiffs fail to state a claim for breach of fiduciary duty.

A claim for breach of fiduciary duty presupposes the existence of such a duty to the claimant.  *See Dorsey v. Am. Express Co.*, 680 F. Supp. 2d 250, 254 (D.D.C.) ("To prevail on a claim for breach of fiduciary duty, a plaintiff must prove facts sufficient to establish the following: (1) the defendant owed plaintiff a fiduciary duty . . . .").  Here, however, the FAC fails to assert that Defendants owed them any such duty.  In fact, it repeatedly states that the Board's only duty was to Howard itself.  *See* 1d Am. Compl. ¶ 91 ("The [Board] and board trustees owe a fiduciary duty to the University and is [*sic*] required to act in good faith consistent with said duty."); *id.* ¶ 98 (providing details to support the alleged "trustees' breach of their duty to the University").  Therefore, Plaintiffs fail to state a claim for breach of fiduciary duty.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Leave to File a Second Amended Complaint (ECF No. 18) is **DENIED** and Defendants' Motion to Dismiss (ECF No. 7) is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 12, 2023                                                                         RUDOLPH CONTRERAS
                                                                                                              United States District Judge